James R. Safford et al., Appellants *v.* Board of Commissioners, Annville Township, Lebanon County, Pennsylvania and Richard H. Meily and Lois H. Meily, Wife, Appellees.

Argued February 2, 1978, before Judges ROGERS, BLATT and DiSALLE, sitting as a panel of three.

*Thomas A. Ehrgood,* with him *Ehrgood & Ehrgood,* for appellants.

*Robert W. Feeman* and *George E. Christianson,* with them *Egli, Reilly, Wolfson & Feeman* and *Christianson & Meyer,* for appellees.

OPINION BY JUDGE ROGERS, June 6, 1978:

The appellants in this case are twenty-two persons who as eleven married couples purchased lots in a residential subdivision called East Annville Development located in Annville, a Township of the First Class. East Annville Development is a project of one Richard H. Meily. The appellants sued Annville Township and Richard H. Meily in equity seeking injunctive relief which would require the township or Meily, or both, to complete the paving of East Queen Street and East Walnut Street in East Annville Development, to install storm sewers where the township requires them and which would additionally require the township to accept and thereafter maintain the two streets as public streets of the township. The Chancellor in the Court of Common Pleas of Lebanon County, after trial on the merits, entered a final order refusing relief and dismissing the complaint. We believe that the appellants were entitled to relief and will order that it be provided.

By its Ordinance No. 217, enacted in July 1954 and remaining in effect thereafter at all times pertinent hereto, the Commissioners of Annville Township

adopted subdivision regulations which, *inter alia,* required subdividers either to construct the public improvements shown on their plans, including streets and storm sewers, or to provide the township with certified checks or surety bonds sufficient in amount to assure the completion of all such improvements. In 1963, the defendant Meily submitted to the Planning and Zoning Commission of Annville Township and thereafter to the Township Commissioners a plan of subdivision of his East Annville Development showing a number of streets but no other public improvements. This plan was approved by the Planning and Zoning Commission and by the Commissioners and was duly recorded in the office of the Recorder of Deeds of Lebanon County. The streets shown on the subdivision plan were not constructed by Meily at the time his plan was submitted, approved and recorded; and it is made apparent by this litigation that the township authorities neglected to require Meily to post the guarantees required by the township subdivision regulations for the construction of public improvements. The failure of the township to require the installation of the streets shown on Meily's division or to secure guarantees of completion was additionally in apparent disregard of Section 3066(c) of The First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. §58066 (c), which provided as follows:

> (c) Improvements or guarantee thereof prerequisite to approval of plan. Before approving any subdivision plan for recording, the board of township commissioners shall either require that the necessary grading, paving and other street improvements, including where specified by the board, curbs, sidewalks, street lights, fire hydrants, water mains, sanitary sewers and storm sewers, shall have been installed in strict accordance with the standards and spec-

ifications of the township, or that the township be assured by means of a proper completion guarantee in the form of a bond or the deposit of funds or securities in escrow sufficient to cover the cost of the required improvements, as estimated by the township engineer, that the said improvements will subsequently be installed by the owner. Where the subdivision plan has been approved and recorded, either after the specified improvements have been completed and approved by the Board of Township Commissioners, or if prior to completion upon proper completion guarantee as aforesaid, purchasers and mortgagees of lots in the subdivision, with or without buildings thereon or on any of them, shall be relieved of any and all liability for any deficiency in lack of or failure to complete the improvements above mentioned as set out in said plan or required as a condition precedent to the approval of the plan of subdivision, and any failure to complete or properly complete said improvements shall not encumber any or all of the lots in the subdivision.

The appellants acquired title to their lots in East Annville Development between August 17, 1973 and August 25, 1975. Four of the eleven married couples who purchased lots during this period acquired them directly from the defendant Meily. The remaining seven married couples acquired their lots from persons to whom Meily had earlier sold them. In each of the agreements of sale by which Meily sold lots to anyone, the following provision was inserted:

These Building Lots are being sold under and subject to the purchasers getting the Sewerage and Water hooked up at their expense and also installing the curbing and getting the street or rough grade for the Township at purchasers

expense. Purchasers are only responsible for water line expense for above lots.

Meily required each buyer of a lot to pay him at settlement a sum of money representing the. buyer's share of the eventual cost of rough grading the roads and of installing curbs.

In November 1973, before any work was done on the streets, two of the appellant lot owners asked the Annville Township Commissioners what needed to be done with the streets in order that the township pave, and thereafter maintain them. The answer by letter over the signature of the Secretary of the Board of Commissioners was that the Commissioners would install (that is, pave) the streets and maintain (that is, accept) them upon the following conditions being met:

(1) Curbing must be installed along both sides of the proposed street to meet township specifications prior to any paving.

(2) The proposed street must be rough graded to the township's specifications.

(3) The proposed street must be dedicated by deed to the township.

Meily arranged for the installation of the curbing and the rough grading of the streets in his subdivision to be done in the Spring of 1974.

At sometime before July of 1974, it was discovered that the courses and distances shown on the 1963 recorded plan for East Annville Development were awry and that adequate descriptions of lots which Meily was then selling could not be provided. Meily, faced with procuring a new survey and new descriptions, consulted and eventually engaged one Harold J. Light for the work. Mr. Light, who was at the time also the Annville Township engineer, told Meily that an amended plan should also contain a provision for storm sewers in some of the streets and across two of the lots in East Annville Development. No storm sewers had been

shown on the original plan approved and filed in 1963. Mr. Light prepared an amended plan showing the storm sewers. This amended plan was approved by the. Township Commissioners, and was recorded in the office of the recorder of deeds of Lebanon County on July 3, 1974. The amended plan was approved and recorded, although the newly indicated storm sewers were not installed and although Meily had not provided any guarantee for their installation. Further, of course, the streets were still in rough graded condition and no deed of dedication had been tendered by Meily. At the time the amended plan was approved and recorded, Section 509 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10509, provided, as it still provides, as follows:

No plat shall be finally approved unless the streets shown on such plat have been improved as may be required by the subdivision and land development ordinance and any walkways, curbs, gutters, street lights, fire hydrants, shade trees, water mains, sanitary sewers, storm drains and other improvements as may be required by the subdivision and land development ordinance have been installed in accordance with such ordinance. In lieu of the completion of any improvements required as a condition for the final approval of a plat, the subdivision and land development ordinance may provide for the deposit with the municipality of a corporate bond, or other security acceptable to the governing body in an amount sufficient to cover the costs of any improvements which may be required. Such bond, or other security shall provide for, and secure to the public, the completion of any improvements which may be required within the period fixed in the subdivision

and land development ordinance for such completion.

Section 511 of the MPC, 53 P.S. §10511, gave and still gives the municipality the power to enforce the developer's obligation to complete improvements required by its regulations. Of course, the storm sewers shown on the 1974 plan have not been installed.

After the rough grading and curbing was completed in the Spring of 1974, some of the plaintiffs began to press for completion of the street by the Township as it had agreed. Meily, apparently for the first time, tendered the Township a deed of dedication on December 2, 1974. The Township then refused and still refuses to complete the streets, accept them or maintain them because the storm sewers shown on the 1974 plan had not been installed and because the rough grading of the streets accomplished by Meily, at the partial expense of the plaintiffs, deviated in some unspecified fashion from Township regulations. The matter has been at impasse since that time. The plaintiffs want the streets installed and accepted as public streets so that they may have public services; the Township wants storm sewers and doubtless desires the streets, which seem by photographs in the record to have suffered damage from water runoff, to be redone before it paves them, all at the expense of the plaintiffs or Meily; and Meily doesn't want to pay for anything.

The plaintiffs argue that the circumstances are such that fairness and equity required a direction that the defendants must provide them with fully improved public roads; that the defendants should be estopped in equity from contending, as they both do, that the plaintiffs are obliged to install the storm sewers as part of their obligation to provide rough grading; and that rules of law relating to the construction of contracts require that the provision of the sales agreement requiring them to rough grade the streets be in-

terpreted as not imposing the onus of storm sewers upon them. The plaintiffs do not need recourse to such general principles, impressive in their statement but often difficult in application to facts. *Statutory* law ineluctably requires the conclusions (1) that the township is obliged at its expense to pave, accept, and thereafter maintain East Queen Street and East Walnut Street as public streets of the township, and (2) that since, as all parties agree, those streets cannot be maintained without the installation of the storm sewers, the township must provide storm sewers, the expense of which it may recover from Meily.

With respect to East Queen Street and East Walnut Street, the township approved Meily's 1963 plan which showed those streets as proposed public streets. Section 3066(c) of The First Class Township Code, then effective, imposed the duty on the township either to see that the developer installed the roads in accordance with the township's subdivision regulations or to obtain guarantees from the developer for the completion before approval. Section 3067 of the Code forbade the sale of lots in a subdivision until a plan had been approved and recorded. Article V of the MPC, 53 P.S. §10501 et seq., which in 1968 supplanted Article XXX-A of The First Class Township Code, 53 P.S. §58061 et seq. and other Acts enabling political subdivisions to make and enforce land subdivision regulations, contained and still contain similar provisions. Section 509 of the MPC, 53 P.S. §10509, as we have noted, requires the completion or the obtaining of guarantees of completion of improvements before approval of subdivision plans. Section 513, 53 P.S. §10513, requires recording of approved plans, and Section 515, 53 P.S. §10515, forbids sales of lots prior to approval and recording of plans. Hence, by approving the original plan in 1963, the township commissioners enabled Meily lawfully to sell lots in his subdivision although

the roads were not completed. They additionally permitted buyers of such lots to believe that the township had in hand guarantees of the completion of public improvements shown on the plan. It seems to us that it must follow that a township whose commissioners by approving plans enable developers to record plans showing proposed public improvements and to sell lots, cannot be heard to tell purchasers of lots that public improvements, for which the township was required to obtain the developers' guarantees, will not in fact be supplied because of the township's failure to comply with the law and its own regulations.

Indeed, Annville Township concedes that it agreed and is obliged to pave and accept the two streets, if and when other parties should install rough grading and curbing. It says that, although the plaintiffs and Meily provided rough grading and curbing in the Spring of 1974 and Meily tendered a deed for the streets in December 1974, it is nevertheless not obliged to proceed because (1) the rough grading was not done to township specifications in some undescribed fashion and (2) because storm sewers are necessary to protect the streets which must be done at the expense of the plaintiffs, Meily or both.

With respect to the township's complaint concerning the unspecified deviation from the rough grading accomplished at the partial expense of the plaintiffs, the nature of this deficiency is not disclosed in the record. Moreover, the plaintiffs alleged in their complaint that the conditions regarding curbing and rough grading were met and accomplished by the plaintiffs and a deed of dedication tendered, and that the township rejected the deed only because the township had directed Meily to install storm sewers which Meily contended was not his responsibility. The township's answer to this averment was that the conditions of curbing and rough grading were not met because the

storm sewers were not installed; it made no mention of any other deficiency in the construction of rough grading and curbing. There is nothing in this record tending to show that the rough grading and curbing installed at the expense of the plaintiffs in the Spring of 1974 deviated from any township specifications for such work and we reject any suggestion that there was such a deviation.

As for the township's other reason for refusing to accept the deed, pave the roads and thereafter maintain them as public streets—the failure of Meily or the plaintiffs to install storm sewers—we are unable to understand how the necessity that this work be done can affect the plaintiffs' right to have East Queen Street and East Walnut Street as shown on the 1963 plan completed at the township's expense. The first official indication of the requirement of storm sewers was their inclusion in the amended plan for East Annville development filed by Meily, approved by the commissioners and recorded on July 3, 1974, a date after the plaintiffs or their predecessors had done their part to install the only public improvements shown on the plans approved in 1963.

The only support provided by the Township and Meily for imposing this after discovered engineering necessity on the plaintiffs is the case of *Ashcom v. Westmont Borough*, 298 Pa. 203, 148 A. 112 (1929). It was there held that a borough ordinance adopted in response to a petition of landowners which directed the grading and paving of a street to be done according to plans and specifications of the borough engineer was a specific adoption of storm sewers shown on the engineer's plans and specifications, with the result that the storm sewers formed a part of the improvement and that their cost was collectible from the petitioning landowners. The plaintiffs have not asked the township to build roads at their expense. They pur-

chased lots in an approved subdivision, the plans for which specified roads and at a time when the Acts of Assembly provided that the approval indicated on the plans imported that any public improvements would be provided by the developers. It is true that some of them directly and others indirectly assumed some of the developers' obligations; but these they discharged, as we have noted, before there was any indication that the township would require storm sewers.

The true authors of the plaintiffs' want of public roads serving their dwellings were the township's feckless administration of its subdivision regulations and its disregard of the positive requirement of statute that plans should not be approved without developers' guarantees for the completion of public works. The result of such has to be an order that the township complete the construction of the streets, including storm sewers which are necessary for the protection and maintenance of the streets. We hasten to add that this remains Meily's subdivision and he is responsible to the township for the cost of the improvements shown but not provided on the amended plan, that is, the storm sewers. In this connection, we direct the township's attention to Section 511 of the MPC, 53 P.S. §10511, as follows:

In the event that any improvements which may be required have not been installed as provided in the subdivision and land development ordinance or in accord with the approved final plat the governing body of the municipality is hereby granted the power to enforce any corporate bond, or other security by appropriate legal and equitable remedies. If proceeds of such bond, or other security are insufficient to pay the cost of installing or making repairs or corrections to all the improvements covered by said security, the governing body of the munici-

pality may, at its option, install part of such improvements in all or part of the subdivision or land development and may institute appropriate legal or equitable action to recover the moneys necessary to complete the remainder of the improvements. All of the proceeds, whether resulting from the security or from any legal or equitable action brought against the developer, or both, shall be used solely for the installation of the improvements covered by such security, and not for any other municipal purpose.

We therefore reverse the order below, reinstate the complaint and direct the court below to enter an order that the defendant, Annville Township, complete the construction of East Queen Street and East Walnut Street, including storm sewers as shown on the amended plan recorded July 3, 1974, and that it thereafter accept and maintain the said streets and storm sewers as public improvements of the township, without prejudice to the right of the township to proceed against the defendant, Richard H. Meily, if necessary, to recover the money necessary to install the said storm sewers.

### Order

And Now, this 6th day of June, 1978, the order of the court below is reversed; the complaint is reinstated and the record is remanded with direction that there be entered in the proceedings an order of the court below directing that the defendant Annville Township complete the construction of East Queen Street and East Walnut Street in East Annville Development, including storm sewers, as shown on the amended plan of subdivision recorded July 3, 1974; without prejudice to the right of Annville Township to recover moneys expended in the installation of said storm sewers from Richard H. Meily as provided by law.

The costs are imposed one half on the Township and one half on Richard H. Meily.