STIVALA INVESTMENTS,
INC., Appellant,

v.

SOUTH ABINGTON TOWNSHIP
BOARD OF SUPERVISORS and
Giles Stanton, Joseph Sproul, Mark
Dougherty, and Manager, James May-
field.

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 2002.
Decided Dec. 5, 2002.
Reargument Denied Feb. 12, 2003.

John A. Tumolo, Pittsburgh, for appellant.

William T. Jones, Scranton, for appellees.

---

1. In the complaint, they are referred to as apartments, but on the plan, they are shown as townhouses.

BEFORE: SMITH–RIBNER, J., PELLEGRINI, J., and FLAHERTY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Stivala Investments, Inc. (Stivala) appeals from a decision of the Court of Common Pleas of Lackawanna County (trial court) dismissing its mandamus action against South Abington Township Board of Supervisors, Giles Stanton, Joseph Sproul, Mark Dougherty and James Mayfield (collectively Township) to compel the Township to accept a road, to issue building permits and to complete the infrastructure for the development of a subdivision.

Dos Mondos, L.T.D. (Dos Mondos) desired to construct a condominium development, i.e. townhouses,[1] with exterior care ultimately to be provided by a homeowner's association, commonly referred to as the Waverly Townhomes Development (Development). On August 13, 1990, the Township gave Dos Mondos subdivision approval to construct 55 townhouses on 13.779 acres which was to be phase one of the Development that ultimately would encompass 77.336 acres. In accordance with subdivision approval, Dos Mondos provided the Township with an irrevocable letter of credit for $493,473 which represented 110% of the cost of completion of the estimated infrastructure improvements. Those improvements were to be completed by January 16, 1991, with the letter of credit expiring on January 30, 1991. A building permit, which appears to have been initially issued in April 1989 before the subdivision plan was approved, was apparently reissued on March 25, 1991, and the six model townhouses were built. Sometime after those townhouses were built, the improvement bond was released

before all the improvements were completed.

Three years later, by deed dated October 14, 1994, Stivala purchased the entire 13.779–acre property needed for phase one of the Development from Dos Mondos. The deed between Dos Mondos and Stivala specifically provided that in consideration for $625,000, it conveyed or assigned the entire phase one tract of the Development containing 13.7449 acres to Stivala. The deed did not contain a description of individual lots, but rather only provided a metes and bounds description of the property.

In the summer of 1998, Stivala went to the Township to obtain information on the issuance of a building permit to commence construction on the additional townhouses. While at the Township offices, Stivala was informed that the Development was aban-doned and it would have to resubmit the plans for Development approval. It was also, presumably, informed that it was responsible for the completion of the infrastructure improvements that Dos Mondos did not complete.

On July 13, 2001, Stivala filed a complaint in mandamus[2] against the Township alleging that because it failed to make Dos Mondos complete the Development's infrastructure, failed to revoke the approval of the permits of occupancy, failed to secure the financial guarantee, and allowed the subdivision map to be recorded, the Township had induced Stivala to purchase property it believed had a complete infrastructure. It contends that by failing to make Dos Mondos complete the infrastructure, under Section 509 of the Pennsylvania Municipalities Planning Code (MPC),[3] 53 P.S. § 10509,[4] the Town-

2. Mandamus is an extraordinary remedy which compels the performance of a ministerial act or mandatory duty. *County of Allegheny Deputy Sheriff's Assoc. v. County of Allegheny*, 730 A.2d 1065 (Pa.Cmwlth.1999). A writ of mandamus may only be issued where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and a lack of any other appropriate and adequate remedy. *Id.* For Stivala to have succeeded, it needed to prove that there was a clear legal right to the performance of a ministerial act by the Township which the trial court did not find to exist.

3. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202.

4. That section provides in pertinent part:
 a) No plat shall be finally approved unless the streets shown on such plat have been improved to a mud-free or otherwise permanently passable condition, or improved as may be required by the subdivision and land development ordinance and any walkways, curbs, gutters, street lights, fire hydrants, shade trees, water mains, sanitary sewers, storm sewers and other improvements as may be required by the subdivision and land development ordinance have

been installed in accordance with such ordinance. In lieu of the completion of any improvements required as a condition for the final approval of a plat, including improvements or fees required pursuant to section 509(i), the subdivision and land development ordinance shall provide for the deposit with the municipality of financial security in an amount sufficient to cover the costs of such improvements or common amenities including, but not limited to, roads, storm water detention and/or retention basins and other related drainage facilities, recreational facilities, open space improvements, or buffer or screen plantings which may be required. The applicant shall not be required to provide financial security for the costs of any improvements for which financial security is required by and provided to the Department of Transportation in connection with the issuance of a highway occupancy permit pursuant to section 420 of the act of June 1, 1945 (P.L. 1242, No. 428), known as the "State Highway Law."
 (b) When requested by the developer, in order to facilitate financing, the governing body or the planning agency, if designated, shall furnish the developer with a signed copy of a resolution indicating approval of

ship now has a mandatory non-discretionary duty to complete the infrastructure.

■ The Township filed preliminary objections to the complaint contending it should be dismissed because the Township did not have a mandatory duty to construct the improvements because Stivala stood in the shoes of Dos Mondos as the developer of the property and was, therefore, responsible for completion of the improvements. Agreeing with the Township, the trial court sustained the preliminary objections and dismissed the complaint, finding that under the MPC, Stivala was the successor to Dos Mondos as developer of the property, and the Township did not have to complete the infrastructure or to accept the roads shown on the recorded subdivision plan as "dedicated." Stivala's mandamus complaint was dismissed and it now appeals.[5]

■ On appeal, Stivala continues to contend that by allowing the security for the infrastructure improvements to lapse before those improvements were made, the Township now has a mandatory, non-discretionary duty under Section 509 of the MPC to complete the infrastructure for the Development at its own expense. If Dos Mondos had remained the owner of the land, it would still be responsible for the improvements, even though the Township released the letter of credit. *See* Section 511 of the MPC, 53 P.S. § 10511, footnote 9, *infra.* In effect, what Stivala is arguing is that it is not the developer, which, under Section 509 of the MPC, is the one who is responsible for infrastructure improvements, because it is not the successor in interest to Dos Mondos merely because it purchased the property from it.

■ A municipality may assess abutting property owners to a street for the cost of the original permanent paving of a street because it is a local improvement, but it may not assess the abutting owners for a subsequent paving. *City of Philadelphia v. O'Brien,* 176 Pa.Super. 235, 107 A.2d 587 (1954). However, rather than having the municipality assess each abutting property owner for the cost of the original paving, Section 503 of the MPC authorizes local municipalities to issue

the final plat contingent upon the developer obtaining a satisfactory financial security. The final plat or record plan shall not be signed nor recorded until the financial improvements agreement is executed. The resolution or letter of contingent approval shall expire and be deemed to be revoked if the financial security agreement is not executed within 90 days unless a written extension is granted by the governing body; such extension shall not be unreasonably withheld and shall be placed in writing at the request of the developer.

(c) Without limitation as to other types of financial security which the municipality may approve, which approval shall not be unreasonably withheld, Federal or Commonwealth chartered lending institution irrevocable letters of credit and restrictive or escrow accounts in such lending institutions shall be deemed acceptable financial security for the purposes of this section.

(d) Such financial security shall be posted with a bonding company or Federal or Commonwealth chartered lending institution chosen by the party posting the financial security, provided said bonding company or lending institution is authorized to conduct such business within the Commonwealth.

(e) Such bond, or other security shall provide for, and secure to the public, the completion of any improvements which may be required on or before the date fixed in the formal action of approval or accompanying agreement for completion of the improvements.

5. Our standard of review of preliminary objections is that on the facts alleged, "[p]reliminary objections should be sustained when the law will not permit a remedy." *P.J.S. v. Pennsylvania State Ethics Commission,* 669 A.2d 1105 (Pa.Cmwlth.1996).

regulations governing the standards by which streets "shall be designed, graded and improved, and walkways, curbs, gutters, street lights, fire hydrants, . . . and other improvements." 53 P.S. § 10503. While it is the abutting property owner's responsibility to pay for the first paving, a municipality may condition approval of a subdivision on the requirement that the subdivider or developer improve the street in accordance with its subdivision ordinance. Section 509 of the MPC requires that:

> No plat shall be finally approved unless the streets shown on such plat have been improved to a mud-free or otherwise permanently passable condition, or improved as may be required by the subdivision and land development ordinance and any walkways, curbs, gutters, street lights, fire hydrants, shade trees, water mains, sanitary sewers, storm sewers and other improvements as may be required by the subdivision and land development ordinances have been installed in accordance with such ordinance.[6]

53 P.S. § 10509.

█ While Section 509 of the MPC does establish a duty upon municipalities to require completion of improvements or secure guarantee thereof as a prerequisite to final approval of a subdivision plot, it must be observed that this code is merely enabling legislation and there must be an implementing ordinance. *See* 53 P.S. § 10101, Historical Note. When a munici-

pality approves a subdivision plan without requiring completion of streets according to its subdivision ordinance or fails to obtain financial security for completion of the streets in conformity with its subdivision ordinance, as in *Safford v. Board of Commissioners, Annville Township*, 35 Pa. Cmwlth. 631, 387 A.2d 177 (1978), we have held that in certain instances, the municipality is obligated to complete the streets according to its ordinance at its own expense.

In *Safford*, 11 married couples purchased lots in a subdivision. Upon sale of the individual properties, the developer required the couples to pay a sum of money representing their share for the rough grading of roads and curbing which was eventually completed and then tender a deed of dedication to the township. The township, however, refused to accept or complete the streets because the storm sewers were not installed and the grading was not up to township specifications. The married couples then brought an action against the township to compel the township or the developer to complete construction of a road in their development. We held in *Safford* that because the lot owners purchased the lots in an approved subdivision which specified roads and because the record did not disclose any reason for the township not to do so, the township had to complete the street construction, but it "hasten[ed] to add that this remains [the developer's] subdivision and he is responsible for the cost of the improvements shown

---

**6.** In this case, this provision was implemented by Section 305.404 of the South Abington Subdivision and Land Development Ordinance which echoes Section 509's language. It provides:

> Required Improvements and Agreements. Before the Supervisors approve any Subdivision Plan for recording, the subdivider shall complete the required improvements or the subdivider shall assure the Township

of the completion of the same by means of a proper completion guarantee in the form of a term bond, or the deposit of funds or securities in escrow sufficient to cover the costs of the specified improvements and their inspection as estimated by an engineer representing the Township, that the said improvements will be installed by owner prior to the expiration of any guarantee, or within two (2) years, whichever is less.

but not provided on the amended plan, that is, the storm sewers." *Id.* at 182.

*Safford* recognized that Section 509 of the MPC, which requires that security be provided for the completion of the improvements, acts in large part to protect lot owners who, as part of the consideration of an approved subdivision, necessarily paid for the public improvements. Where those improvements were not built due to the township's reckless administration of subdivision regulations requiring that the subdivision plan not be approved without guarantee for completion of public works, we held that the municipality was required at its own cost to make those improvements. What we did not decide is whether a subsequent landowner who purchased the entire property with the intent to develop it should be treated the same as someone who purchased a single lot, and whether the municipality had to complete the improvements the original developer was required to make or stand in the shoes of the developer requiring it to make the public improvement or provide a bond if it wanted to further develop the property. To be primarily responsible for the improvements, Stivala would have to be an "applicant" or "developer," as used in Section 509 of the MPC, which uses either term interchangeably. If Stivala falls within the ambit of either of those terms, then it would be primarily responsible for the improvements if it decided to go ahead with the Development. Fortunately, the MPC defines both of those terms.

Under Section 107 of the MPC, 53 P.S. § 10107, an applicant is defined as "a landowner or developer, as hereinafter defined, who has filed an application for development including **his heirs, successors and assigns.**" (Emphasis added). A developer is defined as "any landowner, agent of such landowner, or tenant with the permission of such landowner, who makes or causes to be made a subdivision of land or a land development." A landowner is defined as "the legal or beneficial owner or owners of land including the holder of an option or contract to purchase (whether or not such option or contract is subject to any condition), a lessee if he is authorized under the lease to exercise the rights of the landowner, or other person having a proprietary interest in land." Finally, land development is defined as:

"Land development," any of the following activities:

(1) The improvement of one lot or two or more contiguous lots, tracts or parcels of land for any purpose involving:

(i) a group of two or more residential or nonresidential buildings, whether proposed initially or cumulatively, or a single nonresidential building on a lot or lots regardless of the number of occupants or tenure; or

(ii) the division or allocation of land or space, whether initially or cumulatively, between or among two or more existing or prospective occupants by means of, or for the purpose of streets, common areas, leaseholds, condominiums, building groups or other features.

(2) A subdivision of land.

(3) Development in accordance with section 503(1.1).

53 P.S. § 10107.

In this case, under those definitions, when Stivala bought the property, it was not simply a person who purchased a lot from a developer. Rather, it was seeking to buy a land development to complete the rest of the townhouses as the developer. Stivala pled in its complaint that it "is the owner and in control of" the Development, that it obtained the property from the developer, that it sought information on the construction of additional townhouses, and that it was the third-party beneficial purchaser of the agreements between the

Township and Dos Mondos.[7] Unlike the 11 couples in *Safford* who purchased individual lots to build individual homes and paid for street improvements, Stivala purchased the entire phase one Development plan for the purpose of constructing 49 additional townhouses and further developing the property. By doing so, it assumed the rights and obligations of the original developer and stands in the shoes of Dos Mondos. It not only assumes the benefits of the agreements between Dos Mondos and the Township, but also the obligations which are to complete the infrastructure if it wants to complete the Development.[8]

Because Stivala is the land developer, it is responsible under Section 511 of the MPC [9] to complete all development, including the construction of roads, which it finds necessary for the completion of phase one of the Development. Because the trial court correctly concluded that, as the developer, Stivala's only claim for costs for completing the infrastructure is against itself, its mandamus action must fail because the Township did not fail in completing a ministerial duty owed to it.

 Stivala also contends that the trial court erred in holding that there was no offer and acceptance of a dedication of the public street designated on the subdivision plan. Stivala claims that the dedication of the road occurred when the developer (Dos Mondos) marked the road as "dedicated," and the acceptance occurred when the Township reviewed the subdivision plans and allowed it to be recorded. The Township points out in its brief that in the deed between Stivala and Dos Mondos, Dos

---

7. Stivala further admits in its answer to preliminary objections that it is responsible for the completion of the interior roads of the Development, and that it intends to construct the additional 49 townhouses to complete phase one.

8. The Subdivisions and Land Development Regulations of South Abington Township support this conclusion. A developer is defined the same as subdivider, which is defined as "[a]ny landowner, agent of such landowner, or tenant with the permission of such landowner, who makes or causes to be made a subdivision of land or a land development." Section 202(55). (Reproduced Record at 38a.) Land development is defined as:

a. The improvement of one or more contiguous lots, tracts or parcels of land for any purpose involving (1) a group of two or more buildings, or (2) the division or allocation of land between or among two or more existing or prospective occupants by means of, or for the purpose of streets, common areas, leaseholds, building groups, or other features.

b. A division of land into lots for the purpose of conveying such lots singly or in groups to any person, partnership, or corporation for the purpose of the erection of buildings by such person, partnership, or corporation.

Section 202(33). (Reproduced Record at 35a.)

9. Section 511 of the MPC provides:

In the event that any improvements which may be required have not been installed as provided in the subdivision and land development ordinance or in accord with the approved final plat the governing body of the municipality is hereby granted the power to enforce any corporate bond, or other security by appropriate legal and equitable remedies. If proceeds of such bond or other security are insufficient to pay the cost of installing or making repairs or corrections to all the improvements covered by said security, the governing body of the municipality may, at its option, install part of such improvements in all or part of the subdivision or land development and may institute appropriate legal or equitable action to recover the moneys necessary to complete the remainder of the improvements. All of the proceeds, whether resulting from the security or from any legal or equitable action brought against the developer, or both, shall be used solely for the installation of the improvements covered by such security, and not for any other municipal purpose.

53 P.S. § 10511.

Mondos specifically reserved the right of ingress and egress over the area used as an access road, which it would not have had to do had the road been dedicated as a public road prior to the 1994 deed. Further, the Township has not been presented with a deed for acceptance and has, in no other way, accepted the as yet to be constructed road.[10]

Accordingly, the decision of the trial court sustaining the Township's preliminary objections and dismissing Stivala's mandamus complaint is affirmed.

### ORDER

AND NOW, this *5th* day of *December,* 2002, the decision of the Court of Common Pleas of Lackawanna County at No. 3589 CIV 2001, dated April 19, 2002, is affirmed.

---

**10.** A street is created by dedication when a landowner offers a right-of-way for public use and it is accepted by the public through formal legislative action. *Borough of Ridgway v. Grant,* 56 Pa.Cmwlth. 450, 425 A.2d 1168 (1981). *See* General Municipal Law, Act of May 16, 1891, P.L. 75, *as amended,* 53 P.S. § 1672; First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. § 57005; Third Class Cities Code, Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. § 37915; and Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. § 46702.