# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| The Township of Salem, a municipal corporation | : <br> : <br> : |
| v. | : No. 2083 C.D. 2015 <br> : Argued: April 12, 2016 |
| Miller Penn Development, LLC, a Pennsylvania limited liability company, Appellant | : <br> : <br> : |
| The Township of Salem, A municipal corporation, Appellant | : <br> : <br> : <br> : |
| v. | : <br> : <br> : |
| Miller Penn Development, LLC, a Pennsylvania Limited Liability Company; Future Now, LLP, a Pennsylvania limited partnership; Penn Glade, LLC, a Pennsylvania limited liability company; Wolf Lake, Inc., a Pennsylvania corporation; Kim E. Miller, individually, and Dianne E. Miller, individually | : No. 2174 C.D. 2015 <br> : Argued: April 12, 2016 <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                   HONORABLE ANNE E. COVEY, Judge
                   HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION BY**
**SENIOR JUDGE COLINS**                                        **FILED:  May 26, 2016**

These are consolidated cross-appeals from an order of the Westmoreland County Court of Common Pleas (trial court) denying post-trial relief following a nonjury trial and entering judgment for the Township of Salem

(Township) in the amount of $25,558.45 in an action brought by the Township against Miller Penn Development, LLC (Developer) to remedy defects in a street in Developer's residential subdivision. For the reasons set forth below, we affirm.

In March 2000, the Township's supervisors granted approval of a final plan (Subdivision Plan) for Developer's Whitethorn Subdivision Phase II (Subdivision), a development composed of 22 single-family residential lots located in the Township. The Subdivision Plan provided for construction of a street through the Subdivision that ended in a cul-de-sac. The Township did not require Developer to enter into a developer's agreement or post security before it approved the Subdivision Plan and Developer did not post any bond or other security for the construction of improvements. After the Subdivision Plan was approved and recorded, Developer began constructing the street set forth in the plan, Shaw Court, and completed construction of Shaw Court in the fall of 2001.

On November 15, 2001, after completion of the construction of Shaw Court, the Township and Developer entered into a Developer's Agreement for Public/Site Improvements (Developer's Agreement). The Developer's Agreement provided that "Developer covenants, promises and agrees to build, construct and install all public and private improvements in accordance with the approval plan and any and all specifications of Salem Township, on or before the 31st day of December, 2001" and that Developer agreed that those improvements would be constructed in accordance with the Township's ordinances. (Developer's Agreement ¶¶4, 5, 14, 24, Reproduced Record (R.R.) at 40-41, 46, 49.) The Developer's Agreement provided that "[i]n lieu of the completion of all public and private improvements," Developer was required to post financial security such as a performance bond or letter of credit sufficient to cover 110% of the costs of

2

completion of the improvements and that the Township could seize the security if Developer failed to complete construction of the improvements by December 31, 2001. (*Id.* at 3 & ¶¶5, 6, R.R. at 38, 41-43.) Again, however, Developer posted no bond or security. The Developer's Agreement further provided that "Developer shall offer for dedication, all proposed public streets," and that the Township "shall not accept a request for dedication prior to the completion of ninety percent (90%) of the development." (*Id.* ¶27, R.R. at 50.)

Because the Township's subdivision and land development ordinance (SALDO) in effect at the time of the approval of the Subdivision Plan was held invalid *ab initio* in August 2000, the Westmoreland County SALDO applied to land development in the Township. (Westmoreland County SALDO § 109, Supplemental Reproduced Record (Supp. R.R.) at 331-332.) The Westmoreland County SALDO provided that "[a]ll proposed public streets … shall be constructed as prescribed in the Standard Specifications for street construction for the municipality in which the development is located," and that "[t]he governing body of the local municipality shall have sole jurisdiction over all matters concerning street construction." (*Id.* § 409, Supp. R.R. at 353.) The Township's street ordinance, Township Ordinance 101, required that all newly constructed Township streets, including streets intended for public dedication, must have a two-inch subbase, a four-inch base, a two-inch binder and a one-inch wearing course composed of certain specified materials and required that these layers be compacted. (Township Ordinance 101 §§ 58-59, Supp. R.R. at 382-383.) Shaw Court did not comply with all of the requirements of Township Ordinance 101, and the Township was aware in 2002 that Shaw Court had not been constructed in compliance with Ordinance 101. In addition, the Westmoreland County SALDO

3

required that cul-de-sacs have a minimum paved diameter of 80 feet and Developer's final approved plan showed the cul-de-sac as having an 80-foot paved diameter. (Westmoreland County SALDO § 407, Supp. R.R. at 353; Trial Transcript (N.T.) at 111, Supp. R.R. at 111.) The diameter of the paved Shaw Court cul-de-sac is approximately 60 feet and did not comply with the approved plan.

Shaw Court deteriorated and developed ruts, cracks, potholes and areas of water ponding on the roadway. Developer has requested that the Township accept Shaw Court as a public street, and the Township has refused to accept it. As of 2014, four of the 22 lots in the Subdivision remained unsold. In October 2014, the Township repaired a portion of Shaw Court at the request of the homeowners.

On March 19, 2010, the Township filed this action against Developer.[1] The Township's original complaint sought equitable relief compelling Developer to post a bond and fix the defects in Shaw Court. Developer filed preliminary objections on a number of grounds, including objections that the Township had no cause of action in equity. On July 30, 2010, the trial court entered an order sustaining the preliminary objections to the Township's equity claims. Following this order, the Township filed an amended complaint asserting breach of the Developer's Agreement and failure to comply with Township Ordinance 101 and the Westmoreland County SALDO, seeking $193,165 in damages for the cost of fixing the defects in Shaw Court. Developer filed a motion

---

[1] The Township also named as defendants in its original and amended complaints Developer's principals and three entities affiliated with Developer and its principals, but dismissed its claims against all defendants other than Developer at the start of trial.

4

for summary judgment asserting that the Township's claims were barred by the statute of limitations, which was denied by the trial court on August 2, 2012. In 2013, the case was stayed due to Developer's bankruptcy proceeding. On May 14, 2014, the bankruptcy court entered an order granting the Township relief from the automatic stay with respect to this action. On October 22 and 23, 2014, the trial court held a two-day nonjury trial of the Township's claims against Developer.

On March 3, 2015, the trial court issued an opinion and order finding in the Township's favor and against Developer and awarding the Township $25,558.45 in damages. The trial court found that Shaw Court was not properly installed and held that the action was not barred by the statute of limitations on the ground that Developer did not breach the Developer's Agreement until it made statements in December 2009 that it would not repair Shaw Court. (Trial Court Opinion at 4-5.) The trial court also found that the Township's evidence of the cost of repair of Shaw Court and reconstruction of its cul-de-sac was speculative and inadequately supported. (*Id.* at 5.) The trial court therefore awarded as damages only the amounts that it found that Developer conceded were required for the repairs and reconstruction, $8,265.95 to resurface the deteriorated portions of the Shaw Court roadway and $17,322.50 to fix the cul-de-sac. (*Id.*) Both parties filed motions for post-trial relief, Developer challenging the trial court's statute of limitations ruling and the Township challenging both the preliminary objections ruling that it could not proceed in equity and the trial court's damages award. On July 13, 2015, the trial court issued an order denying the post-trial motions and entering judgment in accordance its March 3, 2015 opinion and order. Both

5

Developer and the Township timely appealed and the appeals were consolidated by this Court.[2]

In its appeal, Developer argues that the trial court's finding that the statute of limitations began to run in 2009 is unsupported by any evidence and that the Township's action is barred because the statute of limitations began to run by 2002. Developer is correct that the Township's cause of action accrued by 2002. Developer breached its obligations under the Developer's Agreement, Township Ordinance 101, and the Westmoreland County SALDO on December 31, 2001 when it did not complete construction of Shaw Court in accordance with those ordinances and the approved plan for the Subdivision by that date. The Township knew that Shaw Court was not properly constructed in 2002, more than seven years before it brought this action in 2010. Although the Developer's Agreement provided that the Township could not accept dedication of Shaw Court as a public street until 90% of the Subdivision development was complete and more than 10% of the lots remained unsold, that did not prevent the Township from bringing suit for the failure to properly complete the construction. *Pocono Township v. Hall*, 561 A.2d 53, 56-58 (Pa. Cmwlth. 1989) (township could enforce road bonds even though developers had not yet offered roads for public dedication).

This action would therefore be time-barred if it is subject to a statute of limitations. If the Township's claim is for breach of the Developer's Agreement, the statute of limitations would be the four-year limitation for actions for breach of a written contract and actions to enforce obligations or liabilities

---

[2] Our review of a judgment following a nonjury trial is limited to examining whether the trial court's factual determinations are supported by competent evidence and whether the trial court committed an error of law. *Southwest Regional Tax Bureau v. Kania*, 49 A.3d 529, 532 n.5 (Pa. Cmwlth. 2012); *Commonwealth v. Hoffman*, 938 A.2d 1157, 1160 n.10 (Pa. Cmwlth. 2007).

based on a writing, 42 Pa. C.S. § 5525(8). If the Township's claim is viewed as a statutory cause of action under the Municipalities Planning Code (MPC)[3] to enforce Township Ordinance 101 and the Westmoreland County SALDO, as the Township contends, rather than a claim under the Developer's Agreement, a six-year statute of limitations applies to actions not subject to another limitation period. 42 Pa. C.S. § 5527(b). At the latest, the limitation period would have expired by 2008, two years before the Township filed this action in 2010.

The trial court's conclusion that the statute of limitations did not begin to run until December 2009 fails for two reasons. First, there was no evidence supporting the trial court's determination that any event occurred in December 2009 that affected the accrual of the Township's cause of action. On October 21, 2014, the trial court granted a motion *in limine* filed by Developer to exclude evidence of statements by Developer at the December 2009 meeting on the grounds that those statements were made in settlement negotiations. Second, even if such evidence were before the trial court, it would not change the fact that the cause of action accrued in 2002. Statements made seven years later could not estop Developer from asserting a statute of limitations that would have already run against that claim.

The Township argues, however, that the statute of limitations cannot bar its action under the doctrine of *nullum tempus occurrit regi* (time does not run against the king). We agree.[4]

---

[3] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

[4] Although the trial court did not rule on this ground, this Court may affirm a trial court's order on grounds other than those on which the trial court based its decision. *Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1023 (Pa. Cmwlth. 2014); *Guy M. Cooper, Inc. v. East Penn School District*, 903 A.2d 608, 618 & n.9 (Pa. Cmwlth. 2006).

Under the *nullum tempus* doctrine, statutes of limitations do not apply to actions brought by the state and its agencies, unless the statute of limitation expressly provides that it limits the government's right to sue. *County of Beaver v. Sainovich*, 96 A.3d 421, 427 (Pa. Cmwlth. 2014) (*en banc*); *Delaware County v. First Union Corporation*, 929 A.2d 1258, 1261 (Pa. Cmwlth. 2007) (*en banc*), *aff'd*, 992 A.2d 112 (Pa. 2010). The statutes of limitations here do not expressly provide that they apply to actions brought by government entities and therefore cannot bar this action if *nullum tempus* applies.

The *nullum tempus* doctrine does not apply to all suits by local governments, but does extend to local governments where they are enforcing strictly public rights. *City of Philadelphia v. Holmes Electric Protective Co.*, 6 A.2d 884, 887 (Pa. 1939); *Duquesne Light Co. v. Woodland Hills School District*, 700 A.2d 1038, 1051 (Pa. Cmwlth. 1997); *Altoona Area School District v. Campbell*, 618 A.2d 1129, 1132 (Pa. Cmwlth. 1992); *Pocono Township*, 561 A.2d at 55. For the *nullum tempus* doctrine to exempt a municipality from the statute of limitations, the municipality's claims must both 1) accrue to the municipality in its governmental capacity and 2) seek to enforce an obligation imposed by law, as distinguished from one arising out of a voluntary agreement. *Holmes Electric Protective Co.*, 6 A.2d at 887; *Sainovich*, 96 A.3d at 427; *Delaware County*, 929 A.2d at 1261; *Pocono Township*, 561 A.2d at 55.

*Nullum tempus* does not apply to actions brought by local government to enforce purely contractual rights where the government entity was not required to enter into the contract. *Holmes Electric Protective Co.*, 6 A.2d at 887-88 (statute of limitations applied to city's action to recover gross receipts fee that private company agreed to pay for running its wires under city streets); *Altoona*

8

*Area School District*, 618 A.2d at 1132-34 (school district construction contract for library was subject to statute of limitations because school district was not required to build libraries). The mere fact that a claim involves a government contract or agreement, however, does not preclude *nullum tempus*. An action involving a local government contract or agreement is brought in the local government's governmental capacity and seeks to enforce obligations imposed by law where the contract is one that the local government entity was required to enter into as part of its public duties. *Duquesne Light Co.*, 700 A.2d at 1052 (*nullum tempus* applied to school district construction contract for school facilities because school district was required by law to construct school facilities). The requirement that the action be brought in the local government's governmental capacity and seek to enforce obligations imposed by law is likewise satisfied and *nullum tempus* applies where the parties' rights are governed by statute, even though the local government was not required to enter into the contract. *Delaware County*, 929 A.2d at 1261 (*nullum tempus* applied to action for unclaimed bond payments because while county had discretion to decide whether to issue bonds, once bonds were issued the parties' rights were controlled by statute).

Here, the Developer's Agreement and fixing Shaw Court involve the Township's duties to its residents. Ensuring the adequate construction of streets is a purely public purpose within a municipality's obligations to its citizens, not a mere voluntary contractual undertaking. *Pocono Township*, 561 A.2d at 56. Indeed, Section 509 of the MPC imposes a duty on municipalities to require that developers complete public improvements in accordance with SALDO requirements. 53 P.S. § 10509; *Stivala Investments, Inc. v. South Abington Township Board of Supervisors*, 815 A.2d 1, 5 (Pa. Cmwlth. 2003).

9

Moreover, the parties' rights in this action are governed by statute. Section 511 of the MPC imposes on developers the cost of correcting improperly installed improvements. 53 P.S. § 10511; *Stivala Investments,* 815 A.2d at 4; *Safford v. Board of Commissioners, Annville Township*, 387 A.2d 177, 182 (Pa. Cmwlth. 1978). Section 511 provides:

> In the event that any improvements which may be required have not been installed as provided in the subdivision and land development ordinance or in accord with the approved final plat the governing body of the municipality is hereby granted the power to enforce any corporate bond, or other security by appropriate legal and equitable remedies. If proceeds of such bond, or other security are insufficient to pay the cost of installing or making repairs or corrections to all the improvements covered by said security, the governing body of the municipality may, at its option, install part of such improvements in all or part of the subdivision or land development and may institute appropriate legal or equitable action to recover the moneys necessary to complete the remainder of the improvements. All of the proceeds, whether resulting from the security or from any legal or equitable action brought against the developer, or both, shall be used solely for the installation of the improvements covered by such security, and not for any other municipal purpose.

53 P.S. § 10511 (emphasis added). Although this language presumes the existence of a bond or other security for improvements and refers to enforcement of the bond and improvements covered by a bond, this Court has held that Section 511 applies and grants municipalities the right to recover the cost of improvements even where there is no bond or security. *Stivala Investments,* 815 A.2d at 4 (municipality can recover costs of improvements from developer under Section 511 of MPC where developer's security had been released); *Safford*, 387 A.2d at 182 (municipality

10

can recover costs of improvements from developer under Section 511 of MPC where developer was not required to post security).[5]

In *Pocono Township*, this Court applied *nullum tempus* to the very type of claim here and held that statute of limitations did not bar a township's action to enforce road bonds where the developers failed to complete street construction, although the action was brought 10 years after the bonds were executed. This Court concluded that the requirements of the *nullum tempus* doctrine were satisfied because the action involved "the quintessentially governmental purpose" of "protect[ing] the public rights of people who choose to purchase lots and live in a municipality … of proper access to and from homes within a development." 561 A.2d at 56. This case is fundamentally no different from *Pocono Township*. While the enforcement there was against the developers' security rather than against the developers directly, that fact is not significant because the Township's statutory rights under the MPC are not limited to recovery against posted security. The public purpose on which the application of *nullum tempus* turned in *Pocono Township* is the same here, providing adequate street access to Township residents' homes.

Because the Township's action sought to enforce strictly public rights, under the *nullum tempus* doctrine it is not subject to the statute of limitations. We therefore affirm the trial court's ruling that the action is not time-barred.

---

[5] Developer's contention that the Township has no authority to enforce the Westmoreland County SALDO and that this action is therefore not governed by Section 511 of the MPC is without merit. Contrary to Developer's contention, the Westmoreland County SALDO specifically grants local municipalities authority over street construction and the authority to enforce proper installation of improvements under Section 511 of the MPC. (Westmoreland County SALDO §§ 409, 508, Supp. R.R. at 353, 362.)

The Township, in its cross-appeal, seeks reversal of the trial court's ruling that it could not seek equitable relief. The Township argues that it had a right to proceed in equity because the Westmoreland County SALDO and Section 511 of the MPC provide for equitable relief. The only equity claim that the Township sought to assert, however, was a claim for specific performance to require Developer to fix the defects in Shaw Court or post a bond to cover that work.

Neither the Westmoreland County SALDO nor Section 511 of the MPC authorizes an equity action to compel specific performance or the posting of a bond. Rather, they provide that where improvements have not been properly constructed, the municipality has "the power to enforce any corporate bond, or other security by appropriate legal and equitable remedies" and, where there is not a sufficient bond or security, "institute appropriate legal or equitable action to recover the moneys necessary to complete the remainder of the improvements." Westmoreland County SALDO § 508 (Supp. R.R. at 362) (emphasis added); 53 P.S. § 10511 (emphasis added). Thus, Section 508 of the Westmoreland County SALDO and Section 511 of the MPC authorize only enforcement of an existing bond or other security and actions to recover the cost of completion of the improvements, not actions for specific performance or to require posting of security. Moreover, neither the Westmoreland County SALDO nor the MPC grants an absolute right to invoke equity jurisdiction. Both of these provisions grant the municipality only the right to pursue "appropriate legal and equitable remedies" and "appropriate legal or equitable action." Westmoreland County

SALDO § 508 (Supp. R.R. at 362) (emphasis added); 53 P.S. § 10511 (emphasis added).[6]

The Township's equity claims were therefore subject to the ordinary requirements of equity jurisdiction. Equity jurisdiction does not exist where the plaintiff has an adequate remedy at law. *Fastuca v. L.W. Molnar & Associates*, 10 A.3d 1230, 1246 (Pa. 2011); *Clark v. Pennsylvania State Police*, 436 A.2d 1383, 1385 (Pa. 1981); *Petrecca v. Allstate Insurance Co.*, 797 A.2d 322, 326 (Pa. Super. 2002). Where the harm to the plaintiff is financial or consists of failure to perform promised construction work, damages are an adequate remedy and preclude equity jurisdiction if they are ascertainable and capable of proof. *Petry v. Tanglwood Lakes, Inc.*, 522 A.2d 1053, 1056 (Pa. 1987); *Clark*, 436 A.2d at 1385; *see also Victoria Gardens Condominium Association v. Kennett Township of Chester County*, 23 A.3d 1098, 1110 (Pa. Cmwlth. 2011) (damages were adequate remedy at law for failure to properly complete construction of roads and other improvements in development and therefore precluded claim for mandamus).

Here, the Township's damages, the cost of fixing the defects in a street, were capable of ascertainment and proof. Although the trial court found that the damages evidence that the Township chose to present was insufficient, that does not demonstrate that damages were unascertainable or incapable of proof. The fact that the plaintiff may not succeed in proving the damages it claims or may not be able to collect those damages because the defendant is insolvent does not

---

[6] Contrary to the Township's contention, *Stivala Investments* does not support the claim that it was entitled to proceed in equity. The Court in *Stivala Investments* held that a successor developer was responsible for completing improvements, not that a cause of action could be brought for specific performance against a developer; the action there was brought by the successor developer to attempt to require the municipality to install the improvements and the Court did not discuss equitable relief against the developer at all. 815 A.2d at 4-7.

13

make damages an inadequate remedy. *Willing v. Mazzocone*, 393 A.2d 1155, 1158, 1159 (Pa. 1978); *Victoria Gardens Condominium Association*, 23 A.3d at 1109. The trial court therefore correctly held that the Township had no cause of action in equity.

The Township also seeks reversal of the trial court's damages award and a new trial on damages or, in the alternative, an increase in the amount of the award. We conclude that the trial court acted well within its authority as fact-finder and that there is no basis to disturb its damages award.

The Township argues that the trial court erred in rejecting its damages evidence because a plaintiff is only required to show a reasonable basis for its damages. The law does not require that damages be proved with mathematical exactness and evidence is legally sufficient to support an award of damages if it provides a reasonable basis for calculating the amount of the plaintiff's damages. *James Corp. v. North Allegheny School District*, 938 A.2d 474, 494-95 (Pa. Cmwlth. 2007); *Vrabel v. Commonwealth*, 844 A.2d 595, 600 (Pa. Cmwlth. 2004). Damages for pecuniary harm cannot be presumed, however, and where the harm is purely financial, both the amounts and items of damages must be proved. *Vrabel*, 844 A.2d at 601. The duty of determining the amount of damages is within the province of the fact-finder, who has exclusive authority to assess the weight and credibility of the evidence. *James Corp.*, 938 A.2d at 495 n.21, 497; *Boehm v. Riversource Life Insurance Co.*, 117 A.3d 308, 328 (Pa. Super. 2015). The fact-finder's determination of the amount of damages cannot be disturbed on appeal absent a showing that the amount awarded resulted from prejudice, partiality or corruption, or that the award bears no reasonable relationship to the loss suffered. *James Corp.*, 938 A.2d at 497; *Boehm*, 117 A.3d at 328.

14

The trial court awarded damages for both of the defects claimed by the Township, the amounts that it awarded are supported by the evidence at trial, and its rejection of the Township's claims for additional amounts involved disputed issues. The Township's damages evidence consisted of the testimony of one witness, Township Engineer Regola, as to his estimates of both the work needed to repair the deteriorated areas of Shaw Court and provide an 80-foot diameter cul-de-sac and the costs of that work. The Township did not introduce evidence of any bids for the repairs or relocation work for Shaw Court or of costs incurred for the repairs or relocation.

While it was undisputed that Shaw Court was not constructed in compliance with Ordinance 101, there was conflicting evidence as to both the nature of the noncompliance and the type of repair needed. Regola testified that there was no base installed (N.T. at 97, Supp. R.R. at 97), but there was other evidence that a base was installed but that the material or the thickness of the layers differed from Ordinance 101 requirements, and that the primary defect was lack of compaction. (N.T. at 29-30, 60, 70-71, 81-82, 223, 230, Supp. R.R. at 29-30, 60, 70-71, 81-82, 223, 230.) The amount of repair needed on the deteriorated portions of Shaw Court was also in dispute. Although Regola testified that the entire roadway in the deteriorated areas must be excavated to a depth of one-and-one-half feet and replaced, he admitted that he had not done the tests to determine this and that his opinion on the amount of excavation was "an estimate on my part without knowing." (N.T. at 115-16, 120-21, 128-30, Supp. R.R. at 115-116, 120-21, 128-130.) The Township's engineers who had originally examined Shaw Court proposed adding an extra asphalt wearing course layer as a method of repairing the roadway. (Plaintiff's Ex. 28, R.R. at 61; N.T. at 62-64, Supp. R.R. at

15

62-64.) The trial court awarded as damages for the roadway repairs the cost, at the estimated rate claimed by the Township, of installing such an additional wearing course on the deteriorated portions of Shaw Court. (Trial Court Opinion at 5; Developer's Written Closing Argument, Supp. R.R. at 291, 298.)

With respect to the cost of expanding the cul-de-sac, the bulk of the Township's claim consisted of costs other than paving the cul-de-sac, such as utility relocation and excavation. (Defendant's Ex. E; N.T. at 141-43, 158-59, Supp. R.R. at 141-143, 158-159.) Regola admitted that "there hasn't been enough field work done to actually complete any kind on construction plans at this point," that "[t]he utilities haven't been located," that he did not know what class of excavation would be involved or what the grade of the area was, and that he based the costs that he used on calls he made to unidentified contractors for general ballpark estimates. (N.T. at 145, 154-56, 164-67, Supp. R.R. at 145, 154-156, 164-167.) The trial court awarded as damages for the correction of the cul-de-sac the cost, at an estimated rate claimed by the Township, of fully paving the portion of the enlarged cul-de-sac proposed by the Township that was not already paved. (Trial Court Opinion at 5; Developer's Written Closing Argument, Supp. R.R. at 292, 298.)

The Township also asserts that the trial court capriciously disregarded the testimony of its damages witness Regola. This argument likewise fails. The trial court is free to believe all, part, or none of the testimony presented at trial and this Court may not reweigh the evidence or substitute its judgment for that of the trial court. *Southwest Regional Tax Bureau v. Kania*, 49 A.3d 529, 532 n.5 (Pa. Cmwlth. 2012); *Commonwealth v. Hoffman*, 938 A.2d 1157, 1160 n. 10 (Pa. Cmwlth. 2007). A trial court's determinations as finder of fact following a nonjury

16

trial can be set aside if there is a failure to credit undisputed evidence that amounts to capricious disregard of evidence that any reasonable mind would find compelling. *Warner-Vaught v. Fawn Township*, 958 A.2d 1104, 1107 (Pa. Cmwlth. 2008). The fact that no other witness testified on an issue or contradicted a particular witness's testimony, however, does not require a trier of fact to accept it as credible or sufficient; if the witness's testimony is challenged by cross-examination or argument, it is controverted and the fact-finder's rejection of that witness's testimony does not constitute a capricious disregard of evidence. *Carroll v. Avallone*, 939 A.2d 872, 875-76 (Pa. 2007). Here, Regola's testimony was challenged extensively on cross-examination and was therefore disputed evidence that the trial court was free to accept or reject.

For the above reasons, we affirm the trial court's judgment.

_____
JAMES GARDNER COLINS, Senior Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| The Township of Salem,<br>a municipal corporation | :<br>:<br>: |
| v. | : No. 2083 C.D. 2015 |
| | : |
| Miller Penn Development, LLC, a<br>Pennsylvania limited liability company,<br>Appellant | :<br>:<br>: |
| | |
| The Township of Salem,<br>A municipal corporation,<br>Appellant | :<br>:<br>:<br>: |
| | : |
| v. | :<br>: |
| | : |
| Miller Penn Development, LLC, a<br>Pennsylvania Limited Liability<br>Company; Future Now, LLP, a<br>Pennsylvania limited partnership;<br>Penn Glade, LLC, a Pennsylvania<br>limited liability company; Wolf Lake,<br>Inc., a Pennsylvania corporation;<br>Kim E. Miller, individually, and<br>Dianne E. Miller, individually | : No. 2174 C.D. 2015<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

# **O R D E R**

AND NOW, this 26th day of May, 2016, the order of July 13, 2015 of the Court of Common Pleas of Westmoreland County in the above-captioned case is AFFIRMED.

_____
JAMES GARDNER COLINS, Senior Judge