James W. Snyder, Jr., Appellant *v.* Bernard B. Naef, Appellee.

Argued April 7, 1978, before Judges CRUMLISH, JR., MENCER and ROGERS, sitting as a panel of three.

*James G. Kellar,* for appellant.

*Victor F. Cavacini,* with him *William E. Schantz,* for appellee.

OPINION BY JUDGE ROGERS, June 8, 1978:

James W. Snyder, Jr., the controller of Lehigh County, brought suit individually and in his official capacity against Bernard B. Naef, the county solicitor, seeking an order in mandamus directing Mr. Naef to pay over to the county the sum of $27,250 received by him from the proceeds of county bond issues.

The controller alleged in his complaint that the money in question was received by the county solicitor for purported legal services in connection with county bond issues but that any services which the county solicitor rendered in this regard he was bound to perform without compensation other than his salary as county solicitor fixed by the county salary board. The county solicitor filed an answer in which he admitted receiving the $27,250 in addition to his salary. He asserted, however, that this sum was paid to him for services performed in connection with the bond issues, which were not such as were required of him as county solicitor. Mr. Naef's answer is not entirely clear on the point of whether he believed that his services were performed for the county or for special bond counsel employed by the county, or whether he considered that he was paid by the county or by bond counsel from their fee.

The case was tried without a jury by a judge of another judicial district, all of the judges of the 31st District consisting of Lehigh County having recused. The judge rendered a decision in favor of the defend-

ant county solicitor and thereafter dismissed the controller's exceptions. The controller's appeal from the judge's order is now before us for disposition.[1] We reverse and direct the entry of judgment in favor of the plaintiff and of an order requiring the defendant below to pay over the money in question to the county.

Mr. Naef served as Lehigh County solicitor from 1968 through 1976. His salary fixed by the county salary board in the years 1973, 1974 and 1975, during which he additionally received the payments here in question, totalled $47,503.

Under the supervision of special bond counsel, a Philadelphia law firm retained for the purpose, the county had sold an issue of non-electoral general obligation bonds in 1970. Mr. Naef did whatever legal work was required locally in connection with this issue without compensation. When in early 1973 the county undertook to issue more non-electoral general obligation bonds, Mr. Naef telephoned bond counsel who had acted in 1970 and told them that he did not intend to do any work on the new issue without compensation. Bond counsel agreed to divide legal fees charged the county with Mr. Naef. The county sold $7,000,000 of its non-electoral general obligation bonds in April 1973; bond counsel billed the county and was paid $8,500; and bond counsel paid Mr. Naef $4,250. The county sold $5,600,000 of its non-electoral general obligation bonds in December 1973; bond counsel billed the county and was paid $22,000; the bank which, as

---

[1] As sometimes happens in appeals, no judgment was entered below. We have heretofore remanded such improvidently taken appeals for the entry of judgment, and in private litigation would no doubt continue this practice. Since, however, this is a matter of public concern, we will overlook the defect and dispose of the matter on the merits.

We note here that the parties stipulated below that the plaintiff in his capacity as controller was a proper person to institute the suit and that mandamus was a proper action.

agent of the county, disbursed the bond proceeds paid each bond counsel and Mr. Naef $11,000. The county sold $8,000,000 of its non-electoral general obligation bonds in October 1974; bond counsel and Mr. Naef jointly billed the county the sum of $18,000; the county paid bond counsel the entire $18,000; and bond counsel paid Mr. Naef $6000. The county sold $8,-410,000 of its non-electoral general obligation bonds in January 1975; bond counsel billed the county and was paid $18,000; and bond counsel paid Mr. Naef $6000.

Since these were all non-electoral general obligation bonds, a simple form of financing, Mr. Naef's description of his duties at the trial below as "leg work" for, and reviewing documents prepared by, bond counsel was accurate indeed. His duties consisted of seeing that the commissioners adopted resolutions prepared by bond counsel, of seeing that financial statements prepared from county records by bond counsel were executed by the appropriate county financial officers and seeing to the insertion in local newspapers of legal advertisements prepared by bond counsel.

Mr. Naef testified that he had discussed his arrangement for being paid for his services with the county commissioners; it is clear, however, that this discussion did not occur at an official or public meeting of the Board of Commissioners and that the commissioners never formally approved the payments in question. Mr. Naef's ambivalence concerning the identity of the employer of services and the source of the payments made to him for them continued at the trial. In a deposition he testified that he worked for bond counsel and was paid by them; the transcript of his trial testimony shows him saying at some places that his activities in connection with the bond issues were work performed for the county and at other places

that they were for bond counsel. On the occasion of the appeal to this Court, Mr. Naef has settled into the position of justifying his receipt of this money as payments for his services to the county, not required by him as the county's salaried county solicitor. The statutes and case law, as well as the circumstances, compel the holding that Mr. Naef was not entitled to the money in question under any theory.

The county solicitor is an appointed county officer whose salary is fixed by the county salary board, consisting of the county commissioners and the county controller. Sections 1620 and 1622 of The County Code, Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. §§1620, 1622. The duties of the county solicitor for which the salary just mentioned is compensation are described in Section 902 of The County Code, 16 P.S. §902, as follows:

> He shall commence and prosecute all suits brought, or to be brought, by the county, wherein whereby any rights, privileges, properties, claims or demands of the county are involved, as well as defend all actions or suits brought against the county, and shall perform all duties now enjoined by law upon county solicitors, and *shall do all and every professional act and render legal advice incident to the office which may be required of him by the commissioners.* (Emphasis supplied.)

In these times when creating indebtedness by selling bonds is a way of municipal life, a county solicitor's "leg work" and review of the few documents required for a non-electoral general obligation issue most surely cannot be characterized as other than professional acts incident to his office.

Further, Lehigh County was, at the times relevant, a county of the third class. Section 904 of The County Code provides:

In counties of the third class, the county commissioners may appoint not more than three assistant county solicitors, and, with the approval of the court of common pleas, special counsel who shall be attorneys at law admitted to practice in the courts of this Commonwealth. In counties of the · fourth, fifth and sixth classes, the county commissioners may appoint an assistant solicitor who shall be an attorney at law admitted to practice in the courts of this Commonwealth. Each assistant and special counsel shall perform such duties in connection with the legal affairs of the county as may be assigned to him by the county commissioners or the county solicitor.

This provision clearly imports that any county· legal work required to be done which is not assigned to assistant solicitors or special counsel appointed as the statute provides is to be performed by the county solicitor. Moreover, requiring as it does appointment by the commissioners and court approval for the employment of special counsel, Section 904 provides important authority contrary to the assertion that the county solicitor may be paid for any legal work done for the county with or without discussing it with the commissioners.

Finally, lest recourse should again be sought in the contention that Mr. Naef was performing services for bond counsel, reference is made to Section 901 of The County Code, 16 P.S. §901, providing that

[The county solicitor] shall, before entering upon the duties of his office, file with the county commissioners an agreement to pay all fees, attorney's fees, and commissions received from every source as county solicitor into the county treasury.

This provision seems also to us to provide yet again that the county solicitor is restricted to his salary as compensation for the performance of legal work for the county.

The County Code's requirements in this regard are not different from the case law long antedating it. In *Lancaster v. Fulton,* 128 Pa. 48, 18 A. 382 (1889), the county solicitor, then an elected official, entered into a contract with the commissioners by which he agreed that he would undertake to collect from the Commonwealth overpaid personal property taxes and the commissioners agreed to pay him twenty-five per centum of the amount recovered. The statute then provided that the county solicitor's salary should be $500 a year and that the solicitor "shall be the legal adviser of the board of commissioners of Lancaster County, and shall represent the said board in all proceedings in law or equity wherein the said county is a party or has any interest." After five years of what the solicitor called "work, labor and great expense" he obtained credits in favor of the county for overpaid taxes amounting to almost $21,000. The county did not pay the compensation called for in the special contract and the solicitor sued. The Supreme Court held that the services with respect to overpaid taxes were within the sphere of the duties of the county solicitor and that neither the solicitor nor the commissioners had power to enter into a contract for extra compensation for this work, declaring "[d]oubtless the very object of the act in creating the office of county solicitor, providing for his election and fixing his salary, etc., was to take the power out of the hands of the county commissioners and place it beyond their reach."

In *Nelson v. Beaver County,* 219 Pa. 320, 68 A. 832 (1908), under statutes much similar to the present provisions of The County Code, the county solicitor

entered into a formal agreement with the county commissioners that he should be paid $600 per year as general counsel but that this salary should not include payment for suits, litigation and special collections. He sued for fees for litigation. The Supreme Court described the statutes as binding on the commissioners and the solicitor and held that no contract between them could annul and set aside the statute. If an express contract could not have the effect of authorizing extra compensation for the county solicitor in that case, it is difficult to understand how Mr. Naef's arrangement with special counsel for dividing legal fees only discussed with the county commissioners, could effect that result here.

A good statement of the rules of law and the reasons supporting them is to be found in *Lawson v. Allegheny County*, 326 Pa. 242, 243-44, 191 A. 600, 601 (1937), where the salaried county architect sought pay for extra work directed to be done by a superior and performed with the knowledge of the county commissioners:

> There can be no recovery for such extra services. In the case of municipal corporations, 'Work outside of office hours ordinarily will not justify extra pay where the salary is definitely prescribed by law; and, in such case, services performed by the officer outside of his official duties will not entitle the officer to additional compensation. Knowledge on the part of the municipal authorities of the performance of extra service will not bind the local corporation to give additional pay. Nor can extra compensation be allowed by virtue of usage, although of long standing. Nor will a promise to pay the officer extra compensation bind the municipal corporation, as such promise is against "sound policy, and quasi-extortion" ' : McQuillin

on Municipal Corporations, 2nd Ed., Vol. 2, sec. 544. 'It is a well-settled rule that a person accepting a public office, with a fixed salary, is bound to perform the duties of the office for the salary. He cannot legally claim additional compensation for the discharge of these duties, even though the salary may be a very inadequate remuneration for the services. . . . Whenever he considers the compensation inadequate he is at liberty to resign. The rule is of importance to the public. To allow changes and additions in the duties properly belonging or which may properly be attached to an office to lay the foundation for extra compensation, would produce intolerable mischief. The rule, too, should be rigidly enforced. The statutes of the legislature and the ordinances of our municipal corporations seldom prescribe with much detail and particularly the duties annexed to public office; and it requires but little ingenuity to run nice distinctions between what duties may and what may not be considered strictly official; and if these distinctions are much favored by courts of justice, it may lead to great abuse': Dillon, Municipal Corporations, (5th Ed.), Vol. 1, Sec. 426(233). A public officer cannot claim additional compensation for the discharge of his duties, though the latter be increased without any corresponding increase in his salary or fees: Hays v. City of Oil City, 8 Sadler 185, 11 A. 63; Lehigh County v. Semmel, 124 Pa. 358, 16 A. 876; Bovaird v. Bradford, 232 Pa. 600, 81 A. 719. A contract made by the commissioners of a county to give the county solicitor, whose salary was fixed by law, an additional compensation for services to be rendered by him, lying within the sphere of

his official duties as prescribed by statute, is ultra vires and incapable of ratification: Lancaster v. Fulton, 128 Pa. 48, 18 A. 384.

The case of *Commonwealth ex rel. v. Jones,* 275 Pa. 298, 119 A. 404 (1923), on which Mr. Naef and the court below largely depended, provides no support for the county solicitor's entitlement to this money. There Cambria County had its regular county solicitor appointed by the commissioners, who was paid an annual salary. They additionally employed another attorney as special counsel in connection with a proposed electoral bond issue to provide funds for specific public improvements. The Supreme Court concluded that the commissioners had the power in these extraordinary circumstances to employ special counsel for specific matters distinctly pointed out in, and made the subject of, a contract before the rendition of the services. As is obvious, the contract there approved was with counsel other than the county solicitor and was for special service where there was a real requirement for professional skill and knowledge additional to those which could be provided by the regular solicitor. The special counsel whose compensation was approved in that case occupied exactly the position occupied by bond counsel here. The rule of *Commonwealth ex rel. v. Jones, supra,* is now incorporated in Section 904 of The County Code.

We therefore reverse the order below; and we remand the record with direction that judgment be entered in favor of the plaintiff, James W. Snyder, Jr., and against the defendant, Bernard B. Naef, and for the entry of an order of the court below directing the defendant to pay over to the County the sum of $27,250 with legal interest thereon as follows: on $4250 thereof from May 1, 1973; on $11,000 from December 10, 1973; on $6000 from October 16, 1974; and on $6000 from April 3, 1975. Costs on the appellee.

ORDER

AND NOW, this 8th day of June, 1978, the order of the court below appealed from is reversed; and the record is remanded with direction that judgment be entered in favor of the plaintiff James B. Snyder, Jr. and against Bernard B. Naef, and for the entry of an order of the court below directing the defendant to pay over to the County of Lehigh the sum of $27,250 with legal interest thereon as follows: on $4250 thereof from May 1, 1973; on $11,000 from December 10, 1973; on $6000 from October 16, 1974; and on $6000 from April 3, 1975. Costs on the appellee.