COUNTY OF BEAVER, by and through the BEAVER COUNTY BOARD OF COMMISSIONERS and The Beaver County Controllers Office

v.

Myron R. SAINOVICH, an individual and Sainovich, Santicola & Steele, a Professional Corporation (formerly known as Sainovich & Santicola, P.C.), Appellants.

Commonwealth Court of Pennsylvania.

Argued April 23, 2014.

Decided July 16, 2014.

Charles W. Garbett, New Castle, for appellants.

Albert A. Torrence, Beaver, for appellee Beaver County Board of Commissioners.

BEFORE: DAN PELLEGRINI, President Judge, and BERNARD L. McGINLEY, Judge, and BONNIE BRIGANCE LEADBETTER, Judge, and RENÉE COHN JUBELIRER, Judge, and P. KEVIN BROBSON, Judge, and PATRICIA A. McCULLOUGH, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge COHN JUBELIRER.

The events leading to this monetary dispute between the County of Beaver (County) and Myron R. Sainovich began in 2006 when the Beaver County Board of Commissioners (County Commissioners) appointed Sainovich, pursuant to Section 901 of The County Code,[1] as its solicitor for a term beginning January 1, 2006, for which he was paid a fixed annual salary. The County Commissioners also appointed Sainovich to serve as an interest arbitrator on its behalf commencing January 1, 2006 for additional compensation. When Sainovich's duties as interest arbitrator ended on July 19, 2006, he and his law firm, Sainovich, Santicola & Steele, a Professional Corporation (formerly known as Sainovich & Santicola, P.C.), billed the County for his services as interest arbitrator at an hourly rate and the County paid him $44,050.00. In 2011, the County determined that the $44,050.00 payment to Sainovich violated The County Code; the County, by and through the County Commissioners and The Beaver County Controllers Office (County Controller), therefore, filed a civil action against Sainovich seeking to recover the $44,050.00 payment. Once the pleadings closed, Sainovich and the County filed cross-motions for summary judgment.[2] By Order entered August 27, 2013, the Court of Common Pleas of Beaver County (trial court) granted the County's motion for summary judgment and denied Sainovich's motion. The crux of the issue on appeal here is whether the work Sainovich performed as the interest arbitrator constituted work as "County Solicitor" such that he could not be compensated for that work over and above the fixed annual salary he received as the County's solicitor.

## I. THE COUNTY CODE

Section 901 of The County Code, 16 P.S. § 901, authorizes a county's commissioners to "appoint a county solicitor, who shall be an attorney-at-law admitted to practice in the courts of this Commonwealth." *Id.* Section 1605 of The County Code, 16 P.S. § 1605, mandates that an appointed county officer, which includes a county solicitor, be paid a fixed and specific salary for his or her services. *Id.; Snyder v. Naef,* 36 Pa.Cmwlth. 39, 389 A.2d 212, 214 (1978). The salary is fixed by a salary board, which consists of the county commissioners and the county controller. Sections 1620 and 1622 of The County Code, 16 P.S. §§ 1620, 1622; *Snyder,* 389 A.2d at 214. The county solicitor is required, "before entering upon the duties of his office, [to] file with the county commissioners an agreement to pay all fees, attorney's fees, and commissions received from every source as county solicitor into the county treasury." 16 P.S. § 901. The duties of a county solicitor are set forth in Section 902 of The County Code which provides:

> He shall commence and prosecute all suits brought, or to be brought, by the county, wherein or whereby any rights, privileges, properties, claims or demands of the county are involved, as well as defend all actions or suits brought against the county, and shall perform all duties now enjoined by law upon county solicitors, and shall do all and every professional act and render

---

1. Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. § 901.

2. A previous motion for judgment on the pleadings filed by Sainovich on the basis that the County's action was barred by the statute of limitations was denied by the Court of Common Pleas of Beaver County pursuant to the *nullum tempus occurrit regi* or "time does not run against the king" doctrine by order entered June 11, 2012.

legal advice incident to the office which may be required of him by the commissioners.

16 P.S. § 902.

## II. FACTS

Sainovich served as the County's solicitor from January 1, 2006 until June 23, 2011. (Trial Ct. Op. at 3.) During Sainovich's tenure as the County's solicitor, the County also retained outside counsel.[3] In 2003, the County had retained the law firm of Thorp, Reed & Armstrong (Thorp Reed) to act as the County's legal counsel in various legal matters. (Trial Ct. Op. at 2.) In 2005, in an attempt to save money, the County Commissioners began discussing the possibility of outsourcing some of the operations at the County's jail. (Trial Ct. Op. at 2–3.) The County engaged Thorp Reed to provide legal advice with respect to the possibility of outsourcing this work. During this time, the collective bargaining agreement between the County and the Union representing the corrections officers employed at the County's jail was about to expire. (Deposition of Joseph Friedman, Esquire at 16, R. Item 40.) Consequently, the County and the Union entered into negotiations; however, the parties could not agree on the terms of a new agreement. (Friedman's Dep. at 16.) Therefore, the dispute regarding the terms of the new agreement proceeded to interest arbitration. (Friedman's Dep. at 16.) During the interest arbitration, the County was represented by Attorney Joseph Friedman of Thorp Reed. (Trial Ct. Op. at 3.) The interest arbitration was heard by a panel of three arbitrators. (Friedman's Dep. at 21–22.) Thus, the County was required to name one person to represent the County's interests during the arbitration proceedings. (Friedman's Dep. at 21–22.) Attorney Friedman recommended that the County appoint Sainovich as its interest arbitrator. (Friedman's Dep. at 22.).

On July 13, 2006, the County Commissioners adopted a resolution appointing Sainovich as the County's " 'professional legal counsel for the position of Arbitrator for Beaver County' " commencing January 1, 2006. (Trial Ct. Op. at 3 (quoting Complaint ¶¶ 9–10, Exs. 5 and 6).) Sainovich's duties in this capacity included serving as the arbitrator representing the County's interests on the panel of three arbitrators hearing the interest arbitration between the County and the Union representing the corrections officers. (Complaint ¶¶ 11, 13.) With respect to Sainovich's compensation for this position, the resolution referenced a fee agreement, a copy of which was to be attached to the resolution.[4] (Trial Ct. Op. at 3.).

While he was serving as the County's interest arbitrator, Sainovich worked with Attorney Friedman. (Trial Ct. Op. at 3.) It was difficult for Attorney Friedman to discern over the course of his working relationship with Sainovich when Sainovich was acting as the County's solicitor and when he was acting as the County's interest arbitrator; however, it was apparent to Attorney Friedman that Sainovich participated in planning legal strategy and otherwise representing the County's interests. (Trial Ct. Op. at 3–4.) Sainovich consulted with Attorney Friedman as to how much Sainovich should bill the County for his

---

3. In addition to appointing assistant county solicitors, a county's commissioners may appoint special counsel to perform "duties in connection with the legal affairs of the county." Section 904 of The County Code, 16 P.S. § 904.

4. As noted by the trial court, this fee agreement is not in the record. (Trial Ct. Op. at 3.).

services as the interest arbitrator. (Trial Ct. Op. at 4.) Sainovich and Attorney Friedman agreed that Sainovich should charge the same hourly rate that Attorney Friedman was charging, which was $250.00 per hour. (Trial Ct. Op. at 4.)

Sainovich's services as interest arbitrator ended on July 19, 2006. (Trial Ct. Op. at 3.) Thereafter, on July 25, 2006, Sainovich submitted a bill in the amount of $44,050.00 to the County solicitor's office for his services related to the "Beaver County Jail Arbitration." (Trial Ct. Op. at 3; Complaint ¶ 12, Ex. 7.) The County Controller issued a check payable to Sainovich's law firm on August 2, 2006 with the notation that the check was for "Legal Fees/Jail." (Trial Ct. Op. at 3; Complaint, Ex. 8.)

Almost five years later, in March 2011, after conducting an investigation regarding the propriety of additional work proposed for Sainovich, the County Controller questioned the $44,050.00 payment made to Sainovich in 2006 for the work he performed as the interest arbitrator. (Trial Ct. Op. at 4; Complaint ¶ 21.) The County Controller reported the payment to the County Commissioners and requested that they conduct an independent review. (Complaint ¶ 22.) After obtaining an independent legal opinion the County Commissioners believed that, because Sainovich had also received a salary for his services as the County's solicitor during this time period, the additional payment of $44,050.00 violated The County Code; therefore, the Commissioners requested that Sainovich return the $44,050.00. (Trial Ct. Op. at 4; Complaint ¶ 23.) Sainovich refused and the County initiated legal action against Sainovich and his law firm to secure the return of the $44,050.00 payment. (Trial Ct. Op. at 4.)

## III. PROCEEDINGS IN TRIAL COURT

After the close of the pleadings, the parties filed cross-motions for summary judgment. In support of his motion for summary judgment, Sainovich argued, *inter alia*, before the trial court that because his activities as the interest arbitrator did not constitute the practice of law or require any specialized legal skill, these activities were separate and apart from the legal work he performed as a licensed attorney for the County as its solicitor. Therefore, the $44,050.00 payment was not in violation of the law.

In support of its cross-motion, the County argued that the separate payment to Sainovich of $44,050.00 for his services as the interest arbitrator while he was receiving annual compensation from the County as its solicitor violated Sections 901 and 902 of The County Code. The County argued that Sainovich was appointed as "professional legal counsel" in connection with the interest arbitration; therefore, the duties he performed were legal in nature and incidental to his duties as the County's solicitor. The County argued further that, pursuant to The County Code, Sainovich could not be compensated over and above his fixed salary as the County's solicitor.

The parties agreed before the trial court that there were no material facts in dispute. (Trial Ct. Op. at 1, August 27, 2013.) Upon review, the trial court concluded that the $44,050.00 payment to Sainovich for legal services above his fixed annual salary as the County's solicitor was in contravention of The County Code. Specifically, the trial court opined:

The County Code requires that a county solicitor "do all and every professional act, incident to the office, which may be required of him by the board of county commissioners." 16 P.S. § 902.

The County Code further mandates that county solicitors be paid fixed and specific salaries. In the instant case, the record establishes that Mr. Sainovich, the Beaver County Solicitor, was appointed by the Commissioners to serve as "professional legal counsel" and he was wearing his "legal hat" and billing for legal services during his service as arbitrator in the resolution of the Jail dispute.

(Trial Ct. Op. at 9.) Accordingly, the trial court held that the County was entitled to summary judgment pursuant to The County Code and ordered that Sainovich repay $44,050.00 to the County's treasury. Sainovich now appeals the trial court's Order to this Court.[5]

### IV. SAINOVICH'S APPEAL TO THIS COURT

In this appeal, Sainovich raises the following issues:[6] (1) whether the County's action is barred by the applicable statute of limitations; (2) whether the trial court erred in resolving a disputed question of fact in favor of the County, which is the moving party; (3) whether the record establishes, as a matter of law, that Saino-

vich's conduct as interest arbitrator constituted the practice of law; (4) assuming that Sainovich's conduct did constitute the practice of law, whether the County is estopped from pursuing its claim against Sainovich since he acted in good faith and to his detriment; and (5) whether the resolution appointing Sainovich as the interest arbitrator should be deemed an amendment to his salary as the County's solicitor. We will address each of these issues in turn.

### A. STATUTE OF LIMITATIONS

Sainovich argues that the County's action seeking the return of the $44,050.00 paid to him in 2006 is barred by the two-year statute of limitations set forth in Section 5524(6) of the Judicial Code[7] or by the four-year statute of limitations set forth in Section 5525(8) of the Judicial Code.[8] Sainovich believes that Section 5524(6) is the controlling statute of limitations but, if this Court disagrees, he contends that the relationship between him and the County was contractual in nature; therefore, the four year limitation is applicable. Sainovich acknowledges that the

---

**5.** As explained by our Supreme Court:

"[An appellate] Court's scope of review of an order granting summary judgment is plenary. Our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or clearly abused its discretion. Summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. When the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment."

*Stimmler v. Chestnut Hill Hospital*, 602 Pa. 539, 981 A.2d 145, 153–54 (2009) (quoting *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 571 Pa. 580, 812 A.2d 1218, 1221–22 (2002) (citations omitted)).

**6.** The issues have been reordered in the interest of clarity.

**7.** 42 Pa.C.S. § 5524(6). Section 5524(6) provides that "[a]n action against any officer of any government unit for the nonpayment of money or the nondelivery of property collected upon an execution or otherwise in his possession" must be commenced within two years. *Id.*

**8.** 42 Pa.C.S. § 5525(8). Section 5525(8) provides, in pertinent part, that an action upon a contract must be commenced within four years. *Id.*

trial court previously determined, when denying his motion for judgment on the pleadings, that the doctrine of *nullum tempus* was applicable to the County's action against him and, therefore, the County's action was not barred by any statute of limitations. (Trial Ct. Op. and Order, June 11, 2012, R. Item 14.) However, Sainovich contends that the trial court's ruling was in error because the doctrine of *nullum tempus* does not shield the County where the claims against the governmental entity arise out of a contractual agreement and, in making its ruling, the trial court did not address the contractual exception.

 As explained by this Court:

The purpose of the *nullum tempus* doctrine is to further the goal of protecting "public rights, revenues and property from injury and loss." *Mt. Lebanon School District v. W.R. Grace & Co.* 414 Pa.Super. 455, 607 A.2d 756, 759 (1992). "The doctrine of *nullum tempus occurrit regi* generally provides that statutes of limitations do not bar actions brought by a state or its agencies. 'Under the doctrine of *nullum tempus,* statutes of limitations are not applicable to actions brought by the Commonwealth or its agencies unless a statute expressly so provides.' (Citations omitted.) Local governments are political subdivisions of a state and are entitled to assert the *nullum tempus* privilege under only limited circumstances. In order for *nullum tempus* to apply, a municipality's claims must (1) accrue to the municipality in its governmental capacity and (2) seek to enforce an obligation imposed by law as distinguished from one arising out of an agreement voluntarily entered into by the defendant." *City of Philadelphia v. Lead Industries Association, Inc.,* 994 F.2d 112, 118–119 (3d Cir. 1993).

*Delaware County v. First Union Corporation,* 929 A.2d 1258, 1261 (Pa.Cmwlth. 2007). A municipality may contractually waive the doctrine of *nullum tempus. See Selinsgrove Area School District v. Lobar, Inc.,* 29 A.3d 137, 140 (Pa.Cmwlth.2011) (holding "that where a Commonwealth agency has offered and entered into a contract addressing applicable statutes of limitations with no mention of the *nullum tempus* doctrine . . . the trial court properly found that the [school district] waived any applicability of the doctrine of *nullum tempus* ").

 Initially, we note that the appointment of a solicitor by a county must be in accordance with The County Code and it is those requirements that the County is seeking to enforce by bringing an action against Sainovich. This is not a breach of contract action. Here, even if the relationship between the County and Sainovich, as the County's interest arbitrator, is viewed as a contractual relationship there is no evidence in the record that the County "offered and entered into a contract addressing applicable statutes of limitations with no mention of the *nullum tempus* doctrine." *Id.* The record only contains the July 13, 2006 resolution appointing Sainovich as the County's " 'professional legal counsel for the position of Arbitrator for Beaver County' " commencing January 1, 2006. (Trial Ct. Op. at 3 (quoting Complaint ¶¶ 9–10, Exs. 5 and 6).) Accordingly, we conclude that the County did not waive the applicability of the doctrine through any sort of contractual relationship between it and Sainovich. Moreover, we agree with the trial court that the doctrine is applicable to the County's action against Sainovich. The County's claim against Sainovich accrued to the County in its governmental capacity and the County is seeking to enforce an obligation imposed by The County Code. Therefore, the County's action against Sai-

novich is not barred by a statute of limitations.

## B. WHETHER THE TRIAL COURT ERRONEOUSLY RESOLVED A QUESTION OF FACT IN FAVOR OF THE COUNTY

Sainovich acknowledges that he agreed before the trial court that there were no material issues of fact in dispute; however, he asserts that the trial court misunderstood the nature of his arguments and decided a key factual issue in favor of the County. Sainovich contends that he moved for summary judgment based on the premise that, as a matter of law, his conduct did not constitute the practice of law, but the trial court appears to hold that whether Sainovich's conduct constituted the practice of law was an issue of fact for the trier of fact. Sainovich asserts that if, as indicated by the trial court, the factual issue of whether Sainovich's activities constituted the practice of law was in dispute, it was error for the trial court to resolve this issue in favor of the County, as the moving party, and enter summary judgment in the County's favor.

Upon review, we discern no error. In the August 27, 2013 opinion in support of its Order granting the County's motion for summary judgment, the trial court did point out that Attorney Friedman "could not distinguish when Sainovich was acting as an interest arbitrator versus the county solicitor." (Trial Ct. Op. at 7.) However, this statement does not support the conclusion that whether Sainovich's activities as the interest arbitrator constituted the practice of law is a question of fact. There is no dispute that Sainovich performed certain services for the County in 2006, that he billed the County for these services seeking payment separate and apart from his fixed salary as the County's solicitor, and that the County paid him for these services. Thus, the primary issue before the trial court was whether Sainovich's receipt of $44,050.00 as compensation for his work as an interest arbitrator, over that of his fixed salary as the County's solicitor, violated The County Code. (Trial Ct. Op. at 4.) This is a question of law that the trial court resolved in the County's favor. The trial court determined that Section 901 of The County Code identifies three categories of remuneration that a county solicitor must remit to the county for work performed incident to the solicitor's office: (1) fees; (2) attorney's fees; and (3) commissions. (Trial Ct. Op. at 9.) Thus, as the trial court correctly held, "[w]hether the work Mr. Sainovich performed is characterized as the practice of law is not determinative of the application of [Section] 901. The question is whether they were services performed incident to his position as county solicitor." (Trial Ct. Op. at 9.)

Accordingly, we conclude that the trial court did not erroneously resolve a question of fact in favor of the County.

## C. WHETHER, AS A MATTER OF LAW, SAINOVICH COULD BE COMPENSATED FOR WORK PERFORMED AS INTEREST ARBITRATOR OVER AND ABOVE HIS FIXED SALARY AS "COUNTY SOLICITOR"

Sainovich asserts that the County's claim against him based upon Section 901 of The County Code, which mandates that a county solicitor be a licensed attorney, is premised upon the assumption that his conduct as the County's interest arbitrator constituted the practice of law. Sainovich contends that this assumption is incorrect; therefore, the County's claim fails. Sainovich asserts that the record shows that the County hired Thorp Reed as special counsel to handle the interest

arbitration, thus relieving the County's solicitor of his duty as legal representative of the County in the interest arbitration. Sainovich contends that while he may have made suggestions concerning the presentation of evidence at the interest arbitration, this conduct did not constitute instruction and advice with regard to the law so that the County could be informed as to its rights and obligations. Sainovich also contends that he did not prepare documents for the County with respect to the interest arbitration and he did not appear for the County before a public tribunal. To the contrary, Sainovich, as the interest arbitrator, was a member of the tribunal that Attorney Friedman appeared before on behalf of the County. Moreover, Sainovich asserts, an interest arbitrator is not required to be a licensed attorney and there is no support for the position that the County's solicitor is obligated to serve as the interest arbitrator as part of his official duties. The County Commissioners could have hired anyone, including a non-attorney, to be the interest arbitrator and the Union's arbitrator was not an attorney. Sainovich contends that these facts leave no doubt that the work of the interest arbitrator does not constitute the practice of law.

As stated previously, a county is authorized pursuant to Section 901 of The County Code to appoint a solicitor and the person appointed "shall be an attorney-at-law admitted to practice in the courts of this Commonwealth." 16 P.S. § 901. A county's solicitor is required "to pay all fees, attorney's fees, and commissions received from every source as county solicitor into the county treasury." *Id.* Thus, pursuant to Section 901, "the county solicitor is restricted to his salary as compensation for the performance of legal work for the county." *Snyder*, 389 A.2d at 215. We must, therefore, answer the question of whether Sainovich's appointment as the

County's "professional legal counsel for the position of Arbitrator for Beaver County" and his work as the interest arbitrator, as a result of that appointment, constituted work as "County Solicitor" such that he could not be compensated for that work over and above the fixed salary he received as the County's solicitor. Simply considering whether such work constituted the practice of law does not answer this question. We must determine whether Sainovich's activities in this capacity were "professional acts incident to his office." *Id.*

A review of Attorney Friedman's uncontradicted deposition testimony reveals that the trial court was correct in its assessment that there was no clear and definite divide between Sainovich's actions as the interest arbitrator and as the County's solicitor. Attorney Friedman's testimony shows that, in preparation for the interest arbitration, Sainovich consulted and participated in legal strategy discussions with Attorney Friedman and Thorp Reed, and that Sainovich provided input on that strategy. (Friedman's Dep. at 25–27.) The interest arbitration was part of the overall strategy developed by Thorp Reed to enable the County to potentially achieve substantial financial savings. (Friedman's Dep. at 20.) Attorney Friedman's testimony further shows that, after Sainovich was appointed as the County's interest arbitrator, Attorney Friedman did not exclude Sainovich from any discussion concerning strategy because it would not "have been good for the [C]ounty's case, because the whole concept is that he [was] part and parcel of the [C]ounty's strategy going forward to try to achieve the best result in an arbitration." (Friedman's Dep. at 54.) Attorney Friedman believed that there was no conflict for Sainovich to act as the interest arbitrator while also serving as the County's solicitor because Sainovich

"was representing the interests of the [C]ounty as an arbitrator and as an attorney in dealing with the strategies that [were] developed and pursued to outsource the operations of the jail." [9] (Friedman's Dep. at 56.)

The July 25, 2006 itemized bill that Sainovich sent to the County seeking $44,050.00 for the services that he rendered for the "Beaver County Jail Arbitration" supports Attorney Friedman's testimony that Sainovich's activities that were related to the interest arbitration overlapped with his role of representing the County's interests, as the County's solicitor, with regard to achieving the County's goal of financial savings. The itemized bill covers the time period between January 6, 2006 and July 19, 2006, and describes the work performed by Sainovich. Some of the descriptions appear to be related to Sainovich's duties as the County's interest arbitrator. Some of the descriptions are vague and it is impossible to ascertain the nature of the work performed. For example, several of the billing entries describe the work performed simply as conferences or consultations with Thorp Reed without specifying the subject of each conference or consultation. (Complaint, Ex. 7.)

However, some of the descriptions of the work performed appear to relate solely to the outsourcing and the privatization of the jail. For example, Sainovich billed the County for: (1) $187.50 for work performed on January 11, 2006 described as "[r]eview of draft jail privatization resolutions for Commissioners and Prison Board.

Emails to and from TR & A;" (2) $600.00 for work performed on January 12, 2006 described as "[r]eceipt and review of correspondence to BCPI re: CiviGenics [10] contract per request of BOC;" (3) $1,350.00 for work performed on January 14, 2006 described as "[r]eceipt and review of legal memorandum prepared and forwarded by TR & A re privatization issues dated 1/10/06;" (4) $125.00 for work performed on April 1, 2006 described as "[r]eceipt and review of documents by R. Cyphert and J McCreary re: Jail privatization;" (5) $850.00 for work performed on June 20, 2006 described as "[p]repare and attend conference with TR & A re: strategic proceeding; public relations;" (6) $325.00 for work performed on June 23, 2006 described as "[c]onsultation with BOC re: outsourcing, revised draft proposal; consultation BCT;" (7) $1,075.00 for work performed on July 17, 2006 described as "[r]eceipt and review of request for injunction to prevent County from moving forward with CiviGenics contract; consultation with BOC; consultation with TR & A; research re: authority;" and (8) $150.00 for work performed on July 19, 2006 described as "[c]onsultation with BOC re: outsourcing; consultation with PG." (Complaint, Ex. 7.) As such, the work performed as described in these entries appears to be professional acts related to Sainovich's duties as the County's solicitor.

The description of the work performed in the July 25, 2006 itemized bill, combined with Attorney Friedman's testimony,

---

9. Attorney Friedman testified that the County's attempt to outsource the labor function of the jail resulted in litigation. (Friedman's Dep. at 58.) The County received an adverse ruling from the trial court in that case, which held that the County did not have the right to reject the interest arbitration award. (Friedman's Dep. at 58.) The County did not appeal and, instead, entered into a new contract with the Union that resulted in substantial multimillion dollar savings to the County. (Friedman's Dep. at 58.).

10. CiviGenics, Inc. submitted a proposal in June 2005 for the management and operation of the County's jail in response to the County's "Jail Privatization RFP." (Beaver County Exhibits Volume II, Ex. 47, R. Item 42.).

shows that Sainovich was utilizing his legal skills and training to achieve, through either the interest arbitration or outsourcing/privatization, substantial monetary savings for the County. In other words, Sainovich was acting in the capacity of "professional legal counsel" when he was representing the County's interests during the interest arbitration. Thus, given Sainovich's dual roles and the intertwining of his duties as the County's interest arbitrator and its solicitor between January 1, 2006 and July 19, 2006, the record supports the conclusion that, as a matter of law, the activities for which Sainovich billed the County during this time period were for professional acts incidental to his duties as the County's solicitor. Therefore, any payment to Sainovich by the County for these activities, over and above Sainovich's fixed annual salary as the County's solicitor, was in contravention of The County Code.

## D. WHETHER THE COUNTY IS ESTOPPED FROM MAKING ANY CLAIMS AGAINST SAINOVICH

Sainovich asserts that the only basis for the County's contention that Sainovich should repay the $44,050.00 is that the payment violated The County Code; however, even if such a violation exists, the County is estopped from making further claims against Sainovich. Sainovich argues that the County is estopped from seeking repayment because he performed the duties of the County's interest arbitrator in good faith, the fees he charged were not excessive, and he clearly performed the work to a satisfactory level.

■ It is well settled that "[t]he doctrine of estoppel is an equitable remedy that may be asserted against the government in this jurisdiction." *Chester Extended Care Center v. Department of Public Welfare*, 526 Pa. 350, 586 A.2d 379, 382

(1991). However, estoppel will not lie against the government where the acts of the governmental entity's employees or agents are in violation of positive law. *Central Storage & Transfer Co. v. Kaplan*, 487 Pa. 485, 410 A.2d 292, 293 (1979).

■ The County is not arguing that Sainovich did not perform the duties of interest arbitrator to a satisfactory level or that the fees charged would have been considered excessive. It is the overlap of his performance of his duties as the County's solicitor, for which he received a fixed annual salary, with the work for which he was paid additional hourly compensation that was in contravention of The County Code. This violated positive law. In addition, as the trial court observed, Sainovich, as the County's solicitor, was charged with the responsibility of advising the County with regard to the requirements of The County Code. As such, it was his responsibility to ensure that the actions of the County complied with the laws of the Commonwealth.

## E. WHETHER SAINOVICH'S COMPENSATION AS THE INTEREST ARBITRATOR SHOULD BE DEEMED AN AMENDMENT TO HIS SALARY AS THE COUNTY'S SOLICITOR

Finally, Sainovich argues that the County's resolution appointing him as the interest arbitrator should be deemed an amendment to his fixed salary as the County's solicitor. Sainovich contends that while there is case law that appears to contradict this position, the facts presented in the cases of *Weaver v. Tracy*, 62 Pa.Cmwlth. 271, 436 A.2d 253 (1981) and *Snyder* are dissimilar to the instant matter and, therefore, are not controlling.

As stated previously, Section 1605 of The County Code mandates that a county's

solicitor be paid for his or her services by a fixed and specific salary. 16 P.S. § 1605. In *Weaver*, the county and its solicitor agreed that his salary would be based on the hourly rate of $45.00. Accordingly, the solicitor's salary varied based upon the number of hours he worked. The county's controller sought a declaratory judgment that this method of compensation violated Section 1605 of The County Code. The trial court determined that $45.00 per hour for services performed by the county solicitor was not the fixed and specific salary required by Section 1605. Upon review, we agreed because, *inter alia*, paying "by the hour and without limitation ... is not the provision of a fixed and specific salary." *Weaver*, 436 A.2d at 255.

In *Snyder*, the county controller filed a mandamus action seeking an order directing its solicitor to pay to the county $27,250.00 that the solicitor had received from special bond counsel for work the solicitor performed on county bond issues. The county controller alleged that the solicitor was not entitled to retain the money because it was for services performed in his capacity as the county solicitor for which he received fixed compensation from the county. The county solicitor asserted, to the contrary, that while he received the money for services performed in connection with the bond issues, the services were not duties of a county solicitor. Instead, the county solicitor characterized his duties as "leg work" for the special bond counsel and reviewing documents prepared by the special bond counsel. Specifically, his duties included making sure: (1) the commissioners adopted the resolutions prepared by the special bond counsel; (2) the appropriate county financial officers executed the financial statements prepared by the special bond counsel; and (3) the legal advertisements prepared by the special bond counsel were placed in the local newspapers.

The trial court determined that the county solicitor did not have to pay the money over to the county; however, on appeal, this Court reversed. We held that the "leg work" performed by the county solicitor and his review of the documentation prepared by the special bond counsel could not be "characterized as other than professional acts incident to his office." *Snyder*, 389 A.2d at 215. We further held that, pursuant to Section 901 of The County Code, "the county solicitor is restricted to his salary as compensation for the performance of legal work for the county." *Id.* We determined that he could not retain the fees even though the county solicitor had informally discussed with the commissioners his arrangement with the special bond counsel to divide the legal fees. *Id.*

Sainovich asserts that the facts in *Weaver* are not applicable here because he was not being paid on an hourly basis as the County's solicitor and his compensation for performing the duties of the County's interest arbitrator was merely payment for the increase in his responsibilities as the County's solicitor. Sainovich asserts further that *Snyder* is not controlling because the payment made to him was with the full knowledge and consent of the County Prison Board, the County Controller, and the County Commissioners, who are members of the salary board. We disagree.

■ Sainovich admits that he was receiving a fixed and specific salary for his services as the County's solicitor. Despite Sainovich's attempts to distinguish *Weaver* and *Snyder*, pursuant to both of these decisions, Sainovich, as an appointed county officer, was prohibited by The County Code from receiving any extra compensation for the services that he performed within the sphere of his official duties as the County's solicitor. *See In re Petition of Montgomery*, 67 Pa.Cmwlth. 2, 445

A.2d 873, 874 (1982) ("A county officer whose salary is fixed as required by law may not have extra compensation for services within the sphere of his official duties."). Notwithstanding that the July 13, 2006 resolution was adopted by the County Commissioners, characterizing the work Sainovich performed as the interest arbitrator as simply an increase in his responsibilities as the County's solicitor for which he deserved extra compensation, pursuant to *Weaver*, is not applicable because hourly payments without limitation are not permissible and, consistent with *Snyder*, he could not retain payments over and above his fixed and specific salary for professional acts incident to his office as a county solicitor.

### V. CONCLUSION

Accordingly, for the foregoing reasons, the trial court's Order is affirmed.

### *ORDER*

**NOW**, July 16, 2014, the August 27, 2013 Order of the Court of Common Pleas of Beaver County entered in the above-captioned matter is hereby **AFFIRMED.**

DISSENTING OPINION BY Judge McGINLEY.

I respectfully dissent to the majority's conclusion that the County of Beaver (County) is entitled to recover the sum of $44,050.00 from Myron R. Sainovich (Sainovich) for services Sainovich rendered as an interest arbitrator. I believe that Sainovich did not violate Section 901 of The County Code,[1] 16 P.S. § 901, when he accepted payment for his service as an arbitrator.

On July 13, 2006, the County adopted a resolution that appointed Sainovich as "professional legal counsel for the position

of Arbitrator for Beaver County" which commenced January 1, 2006. (Trial Court Opinion at 3 (quoting Complaint Paragraph Nos. 9–10, Exhibits 5 and 6)). Sainovich's duties as arbitrator ended on July 25, 2006. He submitted a bill for $44,050.00 for his services. Attorney Joseph Friedman (Attorney Friedman) of the law firm of Thorp, Reed & Armstrong served as legal counsel to the County for the collective bargaining matter for which Sainovich was an interest arbitrator. Attorney Friedman advised Sainovich to bill his services as arbitrator at the rate of $250.00 per hour the same rate as charged by Attorney Friedman. On August 2, 2006, the County Controller issued a check payable to Sainovich's law firm in the amount of $44,050.00.

The County did nothing with respect to this payment until March 2011, when the County Controller questioned the payment to Sainovich. The County Controller reported the payment to the County Commissioners and requested that they conduct an independent review. After the County Commissioners obtained an independent legal opinion, the County Commissioners believed that Sainovich violated the County Code when he accepted the $44,050.00. The County Commissioners requested that Sainovich return this amount. Sainovich refused, and the County commenced this action on October 14, 2011.

I do not believe that it is proper for the County to seek the recovery of these funds over five years after they were paid. The County reached an agreement with Sainovich to serve as interest arbitrator. He discharged his duties as arbitrator in return for the payment of $44,050.00. It appears that the County entered into a contract with Sainovich. The statute of

---

1. Act of August 9, 1955, P.L. 323, *as amended.*

limitations to commence an action based on a contractual claim is four years under 42 Pa.C.S. § 5525(8). The statute of limitations for an action against a government officer is two years under 42 Pa.C.S. § 5524(6). Regardless of which of these statutes controlled, the County failed to commence a timely action against Sainovich within either timeframe.

The majority asserts that the County has not raised a breach of contract action. However, it appears that the County and Sainovich entered into an agreement where he would serve as interest arbitrator in return for compensation. The majority provides a clear definition of the doctrine of *nullum tempus occurrit regi.* As the majority states, in order for *nullum tempus occurrit regi* to apply to a political subdivision, the political subdivision's claims must (1) accrue to the subdivision in its governmental capacity and (2) the political subdivision must seek to enforce an obligation imposed by law as distinguished from an obligation that arose out of an agreement voluntarily entered into by the defendant. *Delaware County v. First Union Corporation,* 929 A.2d 1258, 1261 (Pa. Cmwlth.2007).

The majority further states that the doctrine did apply because the County did not waive the applicability of the doctrine through any sort of contractual relationship between it and Sainovich. I believe that the County did enter into a contract with Sainovich. The majority further states that the County is seeking to enforce an obligation imposed by The County Code because under The County Code the county solicitor must "pay all fees, attorney's fees, and commissions received from every source as *county solicitor* into the county treasury." Section 901 of The County Code, 16 P.S. § 901 (emphasis added). However, I believe that while Sainovich's position as county solicitor helped him obtain the position of interest arbitrator, he was not serving in his capacity of county solicitor when he acted as arbitrator.

In sum, I believe that the County sought to enforce an obligation that Sainovich voluntarily entered into with the County. Additionally, Sainovich was advised by the County's counsel, Attorney Friedman as to what rate to bill his time as an arbitrator. As a result, *nullum tempus occurrit regi* did not apply, and the County's claim was barred by the statute of limitations. I would reverse the order of the trial court that granted the County's motion for summary judgment and denied Sainovich's motion for summary judgment.

Judge McCULLOUGH joins in this dissent.